830 F.2d 547
 Tony GIANCOLA; Margaret Hughes, Plaintiffs-Appellants,
v.
STATE OF WEST VIRGINIA DEPARTMENT OF PUBLIC SAFETY; H.C.
Ryan, individually and in his official capacity as defendant
department's employee and agent; Timothy Hatton,
individually and in his official capacity as defendant
Department's employee and agent; C.W. Mitchem, individually
and in his official capacity as defendant Department's
employee and agent; W.S. Coburn, individually and in his
official capacity as defendant Department's employee and
agent; Monroe County, West Virginia, Sheriff's Office;
Joseph Galusek, individually and in his official capacity as
defendant Sheriff's Office's employee and agent; Warren
Smith, individually and in his official capacity as
defendant Sheriff's Office's employee and agent; Charles
Butcher, individually and in his official capacity as
defendant Sheriff's Office's employee and agent; U.S.
Department of Justice; U.S. Drug Enforcement Agency;
Various Unknown Local, State and Federal Law Enforcement
Officers and Agencies; Does 1-100, Defendants-Appellees.
 No. 86-1270.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 10, 1987.
Decided Oct. 7, 1987.
 
 James Daniel Gerl (Carole L. Scotti, Lewisburg, W. Va., on brief), for plaintiffs-appellants.
 Jeffrey Michael Wakefield (Kay, Casto & Chaney, Charleston, W. Va., R.G. McNeer, David C. Ray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, W. Va., Michael Carey, U.S. Atty., Mary S. Feinberg, Asst. U.S. Atty., Charleston, W. Va., on brief) for defendants-appellees.
 Before CHAPMAN and WILKINS, Circuit Judges, and JOE F. ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 WILKINS, Circuit Judge:
 
 
 1
 Plaintiffs Tony Giancola and Margaret Hughes, husband and wife, appeal the district court's grant of summary judgment in favor of all Defendants. Plaintiffs sought damages and injunctive relief arising from helicopter surveillance designed to locate marijuana cultivating operations in Monroe County, West Virginia.[1] They did not contest the constitutionality of helicopter surveillance in general, but rather contended that the surveillance and search of their property was conducted in an unconstitutional manner. We disagree and affirm.
 
 I.
 
 2
 Since 1981 the Drug Enforcement Administration has provided financial assistance to the West Virginia Department of Public Safety for marijuana eradication operations. These funds are primarily utilized for helicopter surveillance. Plaintiffs complain of surveillance of their property on September 2, 1983 and August 24, 1984.[2]
 
 
 3
 On September 2, 1983, two helicopters conducted surveillance in Monroe County. This operation was one in a series which had identified over 30 marijuana fields in the previous week. As detailed in United States v. Bernard, 757 F.2d 1439, 1440-41 (4th Cir.1985), some of these fields were protected by a variety of security devices, including trip wires, barbed wire stretched across paths at eye level, steel traps, electric fences, and guard dogs.
 
 
 4
 No landing or entry was made on Plaintiffs' property on September 2, 1983. Giancola did testify that the helicopters flew over his property for ten to twenty minutes at an altitude of 100 feet, which he considered to be dangerously low.[3] He further testified that the helicopters were often flown at an angle to afford the occupants a better view, but admitted he could not determine the number of occupants or whether they were wearing uniforms. Both Plaintiffs admitted that the wind generated by the rotors did not disrupt anything on the ground. The testimony of Hughes was similar to that of Giancola, except her estimates of altitude were somewhat lower.
 
 
 5
 The second incident of which Plaintiffs complain occurred on August 24, 1984, the single day that year on which helicopter surveillance was conducted in Monroe County. Only one helicopter was utilized, occupied by state troopers Mitchem and Coburn and piloted by a civilian. The accompanying ground crew was composed of state trooper Ryan, and Monroe County Sheriff Deputies Galusek, Smith and Butcher. Based on the observations of the officers in the helicopter as it flew over Plaintiffs' property, the ground crew was radioed and instructed to enter.
 
 
 6
 As the helicopter flew over Giancola's property, he was observed exiting his house and moving a tarp which covered a pile of wood and brush. Trooper Coburn testified Giancola placed an armload of vegetation which was "identical to what we had observed thousands of times as being marijuana" in the center of the pile and ignited it. He was then observed placing a child on a motorcycle, and riding to a neighbor's house where he left the child. He was next observed returning to his property on a logging road partially obscured from aerial view by trees. He then rode down the road and back again, entered his house, donned beekeeper coveralls, and emerged and tended the fire. He then drove a camouflaged truck down the road and back again. It was during this time that Hughes was observed disappearing into the woods. Giancola parked the truck and began riding the motorcycle up and down the road. The ground crew subsequently arrived and intercepted him. Giancola was handcuffed and taken to his house. He stated that there was no one else on the property, in direct conflict with the information received from the air crew. When they reached his house, Trooper Ryan stepped inside to determine if any other individuals were located there, and then promptly exited.[4]
 
 
 7
 As the helicopter unsuccessfully attempted to land near the house, a canoe was knocked off a boulder and damaged. Giancola also claimed that a beehive was toppled. He testified that in attempting to land, the helicopter reached an altitude much lower than before, approximately 30 to 40 feet above the ground.
 
 
 8
 After landing in a nearby field, the air crew joined the ground crew. When asked by Trooper Mitchem about the other individual who had been observed from the air, Giancola replied that his wife had walked to the neighbor's house where he had taken the child. This information was inconsistent with the direction in which the air crew observed her disappearing into the woods.
 
 
 9
 Deputy Galusek remained with Giancola while the adjoining woods and fields were searched. Galusek made certain that the handcuffs were not too tight, and at one point unlocked them to allow Giancola to remove the uncomfortable beekeeper coveralls. At Giancola's request, Galusek twice accompanied him inside the house for something to drink.
 
 
 10
 Hughes was eventually located in a search of the surrounding woods and was escorted to the house. The handcuffs were removed from Giancola shortly after she arrived. Since no marijuana was discovered, the officers departed.
 
 
 11
 Plaintiffs subsequently filed this suit seeking relief pursuant to 42 U.S.C.A. Sec. 1983 (West 1981) and various state law causes of action. On appeal, Plaintiffs have failed to argue either the merits of the state law causes of action, or that these claims can survive if summary judgment was proper on the section 1983 claims. Consequently, the state law claims are deemed abandoned.
 
 II.
 
 12
 Plaintiffs have named as defendants a combination of federal, state and county law enforcement officers in their individual and official capacities. However, since section 1983 reaches only those acting under color of state law, the liability of the federal officers, if any, must be pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Because the district court addressed the merits of all claims, the allegations against the federal officials will be treated as if they were properly pled Bivens claims.
 
 
 13
 The claims against the officers in their individual capacities seek damage awards against the officers personally. In response to these claims the officers have raised the defense of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity shields the officers from awards of damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person should have been aware. Furthermore, the Supreme Court has recently held that an officer is entitled to summary judgment if a reasonable officer could have believed that the search comported with the fourth amendment, even though it actually did not. Anderson v. Creighton, --- U.S. ----, ----, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).
 
 
 14
 On the other hand, the claims against the officers in their official capacities are claims against the entities for which the officers were acting. Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). While the entities are not entitled to assert a qualified immunity defense, they are not liable under respondeat superior principles. Rather, to establish liability on behalf of the entity, it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity. Monell v. Department of Social Services of New York, 436 U.S. 658, 690-92, 98 S.Ct. 2018, 2035-37, 56 L.Ed.2d 611 (1978). If the officers' actions were in compliance with constitutional standards, there is no liability on the part of the officers or the employing entities.
 
 III.
 
 15
 The fourth amendment protects persons against unreasonable searches and seizures. Plaintiffs argue that the standards established by the fourth amendment were violated in two respects. First, Plaintiffs assert the manner in which the helicopter surveillance was conducted was unreasonable. Second, Plaintiffs claim that the entry and search of their property on August 24, 1984 was unlawful because the officers should have first obtained a search warrant.
 
 
 16
 With respect to their first argument, Plaintiffs recognize that the Supreme Court has upheld the warrantless, physically nonintrusive observation of the curtilage of a residence from an aircraft lawfully operating within public navigable air space. California v. Ciraolo, 476 U.S. 207, ----, 106 S.Ct. 1809, 1813, 90 L.Ed.2d 210, 217 (1986). Plaintiffs therefore do not dispute that the officers could observe their property by helicopter, but rather contend the surveillance was conducted in an unreasonable manner.
 
 
 17
 The general principle upon which Plaintiffs base their claims is sound. The fourth amendment imposes limitations on the manner in which searches and seizures may be conducted. Additionally, as noted by Justice White in a recent dissent from a denial of certiorari, "it is certainly possible that helicopter surveillance could be unreasonably intrusive on account of interminable hovering, raising clouds of dust, creating unreasonable noise, and so forth, [however,] nothing in the record indicates that any such factor was present in this case." California v. Sabo, --- U.S. ----, ----, 107 S.Ct. 2200, 2201, 95 L.Ed.2d 855, 856 (1987) (Justice White, joined by the Chief Justice, dissenting from denial of certiorari).
 
 
 18
 In determining whether the officers' actions contravened the fourth amendment, it is necessary to consider the individual facts of each incident. Law enforcement officials clearly have a legitimate interest in eradicating marijuana cultivating activities. Therefore, the pertinent inquiry is whether the aerial surveillance tactics utilized were unreasonably intrusive or went beyond reasonable efforts to determine if marijuana was being grown in the area. Relevant factors to consider include, among others, the total number of instances of surveillance, the frequency of surveillance, the length of each surveillance, the altitude of the aircraft, the number of aircraft, the degree of disruption of legitimate activities on the ground, and whether any flight regulations were violated by the surveillance.
 
 
 19
 Applying these considerations to the instant case, we find no violation of the fourth amendment.
 
 IV.
 
 20
 During the surveillance on September 2, 1983, two helicopters flew over Plaintiffs' property for a relatively short period of time. This was the first helicopter surveillance of Plaintiffs' property conducted that year. Although Plaintiffs assert the helicopters were operated at a dangerously low altitude, federal regulations specifically allow the operation of helicopters below certain established minimum altitudes as long as "the operation is conducted without hazard to persons or property on the surface." 14 C.F.R. Sec. 91.79(d) (1987). Plaintiffs admitted that nothing on the ground was disturbed by the wind generated by the rotors, and the helicopters were not close enough to ascertain the number of occupants or whether they were wearing uniforms.
 
 
 21
 Plaintiffs' reliance on National Organization for the Reform of Marijuana Laws (NORML) v. Mullen, 608 F.Supp. 945 (N.D.Cal.1985), remanded 796 F.2d 276 (9th Cir.1986) (remanded in part for reconsideration in light of the Supreme Court's decision in Ciraolo and its companion case) is misplaced due to the factual distinctions between it and the present case. NORML involved the grant of a preliminary injunction based on uncontradicted affidavits showing "sustained and repeated buzzings, hoverings, and dive bombings that at best disturb, and at worst terrorize, the hapless residents below." NORML, 608 F.Supp. at 957. Among other specifics, the affidavits described flights at an altitude low enough for the facial features of the crews to be visible, incidents during which crew members peered into homes, and numerous flights over the same area. Unlike the surveillance in the instant case on September 2, 1983, the tactics in NORML were unreasonably intrusive and exceeded those reasonably necessary for the discovery of marijuana cultivating activities.
 
 
 22
 Accordingly, the actions of the officers on September 2, 1983, as described by Plaintiffs, did not constitute unreasonably intrusive surveillance in violation of the fourth amendment.
 
 V.
 
 23
 The aerial surveillance and subsequent ground search on August 24, 1984 were conducted by state troopers and county deputies, with no federal officers involved. Almost a year had passed since the previous aerial surveillance of Plaintiffs' property.
 
 
 24
 On this occasion the helicopter occupants observed Giancola exiting his house and removing a tarp from a pile of wood and brush. He placed an armload of vegetation on the pile, identified by an experienced officer as appearing to be marijuana, poured an accelerant over it, and ignited the pile. He mounted a motorcycle and appeared to be leaving the premises. Another individual disappeared into nearby woods. Giancola continued his erratic behavior, traveling up and down the road on the motorcycle, entering his house and changing clothes, tending the fire, driving a camouflaged truck, and then riding the motorcycle again.
 
 
 25
 The officers' observations of Plaintiffs' behavior clearly gave rise to probable cause to believe that marijuana was being destroyed and that immediate action was necessary. It was reasonable for the air crew to engage in sustained surveillance of the individuals on the ground. The entry and search of the property by the ground crew, later joined by the air crew, was proper pursuant to the exigent circumstances exception to the warrant requirement of the fourth amendment. Schmerber v. California, 384 U.S. 757, 770-71, 86 S.Ct. 1826, 1835-36, 16 L.Ed.2d 908 (1966). Furthermore, the major portion of the search occurred in nearby fields and woods, and not within the curtilage of the home. The warrantless search of these areas was additionally justified by the open fields doctrine. United States v. Dunn, --- U.S. ----, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).
 
 
 26
 The brief, protective entry into Plaintiffs' house by Trooper Ryan was also constitutionally permissible. The officers knew that two adults had been seen by the air crew, and Giancola had given conflicting information concerning the whereabouts of that other individual. In light of the assorted dangers which officers encounter during marijuana eradication efforts, this conduct was reasonable. United States v. Baker, 577 F.2d 1147 (4th Cir.), cert. denied, 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978).
 
 
 27
 There was also no constitutional violation in handcuffing Giancola until Hughes was located. The contradictory information from Giancola concerning her whereabouts gave the impression that she might be waiting to assist him in some way. It was reasonable for Giancola to be restrained to ensure that any danger which Hughes might present would not be increased by him.
 
 
 28
 Accordingly, summary judgment was properly entered in favor of Defendants.
 
 VI.
 
 29
 In addition to affirming summary judgment for the State of West Virginia because its troopers did not violate the fourth amendment, we also affirm the district court on the basis of the eleventh amendment. Plaintiffs attempt to avoid the eleventh amendment bar by arguing that West Virginia has waived its sovereign immunity in certain limited instances. However, they fail to recognize the distinction between sovereign immunity and eleventh amendment immunity. The former is an immunity from suit altogether, while the latter is immunity from suit in a particular forum. A state may waive either of these immunities, but while its "general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (citations omitted).
 
 
 30
 Finally, we summarily reject Plaintiffs' assertions that the district court erred in denying their motion for a change of venue and that the district court was biased.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs also alleged that their home was searched while they were on vacation in January, 1984. This purely speculative claim does not warrant further discussion on appeal
 
 
 [2]
 Plaintiffs repeatedly raise the issue of five other flights by helicopters over their property. However, by Plaintiffs' own testimony, these were large military aircraft. There has been absolutely no showing of a connection between these aircraft and Defendants. Plaintiffs' conclusory inferences regarding a possible connection were properly rejected at the summary judgment stage of the proceedings. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)
 
 
 [3]
 In several instances, Plaintiffs' estimates of the length of surveillance and altitude of flight are contradicted by affidavits submitted by Defendants. The district court properly made no attempt to resolve these conflicts during the summary judgment proceedings. We likewise accept Plaintiffs' versions of the incidents for purposes of this appeal
 
 
 [4]
 Plaintiffs' initial complaint, together with an affidavit submitted by Giancola, indicate that the officers handled their weapons in a reckless fashion, frequently pointing them at Giancola. These assertions were rebutted in full by subsequent deposition testimony from both Plaintiffs, and thus were properly rejected at the summary judgment stage of the proceedings