386 S.E.2d 15

**STATE of West Virginia,**

v.

**Terry Lee FORSHEY.**

**No. 18549.**

Supreme Court of Appeals of West Virginia.

April 19, 1989.

David M. Finnerin, Parkersburg, for Terry Lee Forshey.

C. Scott Durig, Asst. Pros. Atty., Parkersburg, for State.

WORKMAN, Justice:

This case is before the Court upon an appeal by Terry Lee Forshey. It arises from an order of the Circuit Court of Wood County which accepted a conditional guilty plea,[1] and adjudged the defendant guilty of manufacturing marijuana. The court placed the defendant on probation for a three-year period after suspending execution of his sentence. The only assignment of error made by the defendant is that the trial court erred in refusing to suppress, from use as evidence against the defendant, certain marijuana plants seized from the defendant's property without a search warrant. We conclude that the evidence was properly seized under the open fields doctrine and the plain view exception to the warrant requirement and affirm the defendant's conviction.

On July 29, 1987, Howard Mehringer, a helicopter pilot, Sergeant S.F. Null, a State Police officer, and Deputies Terri Fluharty and Ronald Barniak of the Ritchie County Sheriff's Department were engaged in helicopter surveillance looking for marijuana plants.

Marijuana plants were observed growing in the vicinity of a chicken coop building on what became known as the Forshey property. These marijuana plants were not visible from the public road. Title to the Forshey property is actually held in the name of Sharon Lutz, subject to a life estate in her parents, Elsie and Charles Forshey. Mr. and Mrs. Forshey lived in one house on the property and their son, Terry Forshey, lived in another house located on the same property.

The helicopter pilot landed on the Forshey property. Sergeant Null instructed the two deputies to seize the marijuana plants growing next to the chicken coop. Sergeant Null and Howard Mehringer proceeded to Charles and Elsie Forshey's house. Elsie Forshey was in the front yard of her home shucking corn; Charles Forshey was sitting on the front porch; and a sixteen-year-old girl, Lucie Wright, was in the front yard stringing beans.

Sergeant Null determined from the Forsheys that their property was located in Wood County, West Virginia. He was unsuccessful in reaching the Wood County State Police Detachment on his radio unit, and therefore asked and received permission to use the telephone at the Forshey home. Sergeant Null telephoned the Wood County State Police Detachment and gave the local officers directions to the Forshey property.

Sergeant Null testified that it was approximately twenty-five minutes before the Wood County State Police arrived at the Forshey property.

When the local officers arrived at the scene, the marijuana plants in the vicinity of the chicken coop previously observed from the air (hereinafter called first set of plants) had already been pulled out of the ground and stacked in the vicinity of the

1. *W.Va.R.Crim.P.* 11 does not address the conditional guilty plea. Since the plea was made and accepted by the defendant, the State and the trial court, without objection, this Court, at this time, will not reach the issue of whether authority actually exists for such a plea.

helicopter. In addition, all four occupants of the helicopter had walked down from the parents' house, over a hill to the vicinity of the defendant's house and outbuilding. There they observed various marijuana plants in the vicinity of the defendant's house, including some planted in the ground, some in a wagon in front of an outbuilding, and some located inside an outbuilding, the doors of which were standing open (hereinafter called second set of plants).[2]

Additional state police officers had been requested by Sergeant Null, and when they arrived upon the scene, a written consent to search was obtained from Charles and Elsie Forshey. When the defendant arrived home that day, an officer asked his permission to search his residence and he consented. No marijuana was located in the residence.

The main issue before the Court is whether the warrantless seizure of the marijuana plants observed from the air upon the Forshey property was reasonable under the Fourth Amendment to the *United States Constitution*.[3] The defendant contends the chicken coop, and all the other outbuildings on the Forshey property were within the curtilage of the defendant's home. Therefore, the marijuana plants were not found in open fields but in a constitutionally protected area. The State, in arguments submitted before the lower court,[4] contends that the warrantless seizure of the defendant's property was reasonable because of the open fields doctrine and the plain view exception to the warrant requirement.

The Supreme Court of the United States in *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924) originated the "open fields" doctrine by refusing to extend the "special protection accorded by the Fourth Amendment" to cover things seized in open fields. *Id.* at 59, 44 S.Ct. at 446. Then, in a later case, the Court further explained that the government's intrusion onto open fields was not one of those prohibited by the Fourth Amendment since there is "no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields" or land that is generally "accessible to the public and the police in ways that a home, an office, or commercial structure would not be." *Oliver v. United States*, 466 U.S. 170, 179, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984). This Court also recognized and applied the open fields doctrine in *State v. Weigand*, 169 W.Va. 739, 289 S.E.2d 508 (1982).

In the *Weigand* case, deputies observed marijuana plants growing on defendant's property while patrolling a public highway. The deputies returned to the sheriff's office and reported their discovery to the sheriff. The next day the sheriff went to the area where the plants were seen growing and concluded that the plants were marijuana. The sheriff returned to the jail to get assistance before again returning to the defendant's property and seizing a number of marijuana plants from the property without a search warrant. 169 W.Va. at 740, 289 S.E.2d at 509.

This Court held that law enforcement officials who sight, from a public highway,

2. The record designated on appeal by the defendant does not make clear when these plants which were observed when law enforcement officers walked over a hill toward the defendant's house and outbuilding were actually seized. The officers' observations, however, did take place prior to obtaining the consent to search from the defendant and his parents. Moreover, the defendant only tangentially raised the issue of whether this conduct by the police constituted an unconstitutional search under the Fourth Amendment by arguing only that the chicken coop and outbuildings collectively fell within the curtilage of the defendant's home.

3. Article III, Section 6 of the *West Virginia Constitution* uses language which parallels that found in the *United States Constitution:* "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

4. The State did not submit a brief before this Court.

marijuana plants which are not surrounded by any signs of privacy are entitled to go upon the property and seize those plants without a warrant. *Id.*, 169 W.Va. at 742, at 510.

In *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), reh'g denied 478 U.S. 1014, 106 S.Ct. 3320, 92 L.Ed.2d 728 (1986) and *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), reh'g denied 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1987), the United States Supreme Court further expanded the open fields doctrine. In *Ciraolo*, the Court held that the warrantless aerial observation of a fenced-in backyard within the curtilage [5] of the defendant's home did not violate the Fourth Amendment. 476 U.S. at 207, 106 S.Ct. at 1809.

The facts of the present case are very similar to those in *Ciraolo*, in that the police went up in the helicopter for the sole purpose of locating marijuana plants that would otherwise go undetected. The plants located on the Forshey property were not only easily identifiable and unobstructed from the view of the helicopter, but were not located on the property of the defendant, but that of his parents. Thus, as far as the helicopter observation of the marijuana plants on the Forshey property, we agree with the Court in *Ciraolo* which reasoned:

> In an age where private and commercial flight in the public airways is routine, it is unreasonable for respondent to expect that his marijuana plants were constitutionally protected from being observed with the naked eye from an altitude of 1,000 feet. The Fourth Amendment simply does not require the police traveling in the public airways at this altitude to obtain a warrant in order to observe what is visible to the naked eye.

*Id.* at 215, 106 S.Ct. at 1813–14.

**5.** The curtilage of a dwelling house is defined as:

> a space necessary and convenient, habitually used for family purposes and the carrying on of domestic employment; the yard, garden, or field which is near to and used in connection with the dwelling.

*Bare v. Commonwealth*, 122 Va. 783, 94 S.E. 168, 172 (1917). Further, this Court has recog-

The defendant in this case is most concerned that the seizure of the marijuana plants occurred within what he alleges is curtilage to his home. In *United States v. Dunn, supra,* the Supreme Court addressed the curtilage issue as it relates to the open fields doctrine. The open fields doctrine was applied to uphold the issuance of a search warrant based upon facts gained from three warrantless searches of the defendant's property by law enforcement officers. The Drug Enforcement Administration (DEA) discovered that Dunn's co-defendant had purchased large quantities of chemicals used in the manufacture of illegal drugs. The DEA agents then obtained warrants which authorized the installation of miniature electronic transmitter tracking devices, or "beepers" in the drums containing the chemicals. The agents then tracked the co-defendant's pickup truck from the day he used it to take possession of the chemicals until the chemicals arrived at Dunn's ranch property. *Dunn,* 480 U.S. at 296–97, 107 S.Ct. at 1137. Aerial photographs of the ranch property showed the co-defendant's pickup truck backed up to a barn which was located behind Dunn's ranch house. *Id.* at 297, 107 S.Ct. at 1137. The agents made the warrantless entries onto the defendant's property which was encircled by a perimeter fence and contained several interior fences. *Id.* at 297–98, 107 S.Ct. at 1137–38.

The agents crossed the perimeter fence and interior fence before locating the barn where drugs were being manufactured. The agents not only smelled odors of the drugs coming from the area of the barn, but crossing two more fences and using a flashlight to peer into the barn, they observed what was thought to be a phenlacetone laboratory. The agents did not enter the barn. They returned to get a search warrant before searching the barn and arresting the defendant and seizing the

nized that the United States Supreme Court has generally held that the open fields doctrine must also take into account "the question of whether the area under consideration bore some indicia of an expectation of privacy." *Weigand,* 169 W.Va. at 742, 289 S.E.2d at 510.

equipment, chemicals and drugs on his property. *Id.*

In addressing the issue of whether the officers had violated the defendant's Fourth Amendment rights by entering property which he alleged was curtilage to his home, the Court utilized the following four factors:

the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301, 107 S.Ct. at 1139.

The Court concluded that the law enforcement officers' conduct did not constitute a constitutional violation because they never entered the barn, nor the curtilage of the defendant's home, but did their observing from the open fields upon which the barn was constructed. *Id.* at 304, 107 S.Ct. at 1141.

Applying the same factors to the present case, the chicken coop was approximately 195 feet from the defendant's house, according to Petitioner's Appeal Exhibit 2. (This exhibit was a diagram of the Forshey property not drawn to scale). It also appears from that exhibit that the wagon and outbuilding are closer in proximity to the defendant's home. Those buildings, however, do not appear to be within any enclosure surrounding the defendant's home. There were no facts which indicated that those buildings were enclosed with the defendant's home by a common fence, for example. The outbuildings and chicken coop were not being used for solely family-type activities, but for illegal purposes also. Finally, the officers observed the first set of plants from the air and only had to walk over a hill to see the second set of plants, which indicates there were no special means used by the defendant to protect these areas from people's observation.

Thus, this Court concludes that the chicken coop and other outbuildings were not within the curtilage of the defendant's home. The buildings were located in the area regarded as an open field where no expectation of privacy existed.

Clearly, the first set of plants seized, those which had been observed from the air, could be seized without a search warrant as they were located in open fields and no search was necessary. A closer issue exists as to the second set of plants, those observed without benefit of a warrant in the vicinity of the defendant's home and prior to obtaining a consent to search.[6]

Had the law enforcement officers observed and seized the first set of plants located next to the chicken coop and then obtained a search warrant to search the entire property based on this information, the search would have met the test of reasonableness according to the Fourth Amendment.

The law enforcement officers in this case, however, landed the helicopter, seized the first set of plants and then walked over a hill towards the defendant's home before observing the second set of plants. This Court had previously held in Syllabus Point 1 of *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804, 806 (1980) that:

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the *West Virginia Constitution*—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made the course imperative.

---

**6.** Except for the curtilage issue, the defendant failed to argue or brief the propriety of the warrantless seizure of the second set of plants. Therefore, the defendant may be said to have waived any error in this regard. Generally, "[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syllabus Point 6 of *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374, 376 (1981). Nevertheless, that issue will be dealt with, since the assignment of error was sufficiently broad to arguably include the seizure of the second set of plants.

Thus, unless an exception to the warrant requirement is met, the search and subsequent seizure of the second set of marijuana plants would be considered unreasonable.

■ This Court previously held in Syllabus Point 1 of *State v. Thomas*, 105 W.Va. 346, 143 S.E. 88 (1928), that:

Our constitutional guaranty against unreasonable searches and seizures, providing that no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person or thing to be seized, does not prohibit a seizure without such warrant, where there is no need of a search, but the contraband subject-matter is fully disclosed and open to any one of the senses.

This Court later identified three requirements which must be met before a warrantless seizure of property in plain view is constitutionally permissible:

(1) the police must observe the evidence in plain sight without benefit of a search (without invading one's reasonable expectation of privacy),

(2) the police must have a legal right to be where they are when they make the plain sight observation and,

(3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime.

*State v. Stone*, 165 W.Va. 266, 273, 268 S.E.2d 50, 55 (1980). *See also, Coolidge v. New Hampshire*, 403 U.S. 443, 465–72, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971), reh'g denied 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971).

■ As previously determined, the defendant in this case had no expectation of privacy in the land from which the second set of marijuana plants were seized since those plants were not located in the curtilage of his home; hence, the first requirement for plain view is met. In applying the second requirement to this case, the law enforcement officers' right to be where they were arises not only from the open fields doctrine but the officers' walking over the property toward the defendant's home could also be construed as a protective sweep of the area similar to the one conducted in *Giancola v. State of W.Va. Dept. of Public Safety*, 830 F.2d 547 (4th Cir.1987),[7] since the officers had already seized one set of marijuana plants, thereby confirming that the property was being used for illegal purposes. In *Giancola*, the Fourth Circuit Court of Appeals in discussing the warrantless search of the property found that "the major portion of the search occurred in nearby fields and woods, and not within the curtilage of the home. The warrantless search of these areas was additionally justified by the open fields doctrine." *Id*. at 551–52. (citations omitted). The final requirement for plain view is met since the officers, through their training and skill, had probable cause to believe that the plants were marijuana plants and, therefore, contraband and evidence of a crime.

Even though the marijuana plants located in the vicinity of the defendant's home were seized without the benefit of a search warrant, the law enforcement officers' conduct fell within the criteria established by this Court in order for the plain view exception to apply.

---

7. In *Giancola*, 830 F.2d at 547, the appellant brought a civil rights action against federal and state officers challenging, among other things, the aerial surveillance and subsequent ground search of appellant's property without a warrant. The court upheld the search on the basis of the open fields doctrine and the exigent circumstances exception to the warrant requirement since the police officers had reason to believe that the marijuana plants were being destroyed. *Id*. at 551–52. Likewise in *United States v. Bernard*, 757 F.2d 1439 (4th Cir.1985), the court upheld the warrantless seizure of marijuana plants when, after conducting aerial surveillance of the defendant's property, the helicopter landed and law enforcement agents were conducting a protective sweep of the area when they saw marijuana plants hanging in a barn in plain view through an open door. *Id*. at 1443. The evidence also indicated the officers cut down and seized marijuana plants that were growing in a field which was located away from the defendant's residence. *Id*. at 1441. The Fourth Circuit Court of Appeals, in its ruling, held "[t]he sweep, which consisted of a mere look around the premises [which were in Bernard's curtilage], was a minimal intrusion into Bernard's privacy." *Id*. at 1443.

Based on the foregoing opinion, we find the seizure of both sets of marijuana plants was proper and, therefore, the defendant's motion to suppress was rightfully denied by the trial court. Consequently, the judgment of the trial court is affirmed.

Affirmed.

MILLER, Justice, dissenting:

I must respectfully dissent.

### I.

Initially, I thought that one of the reasons we agreed to hear this case was to determine the procedural issue of whether appeals from conditional guilty pleas are permissible. As the majority notes, the defendant entered into a guilty plea, which the judge accepted, conditioned on his right to appeal the denial of his motion to suppress the evidence seized by the police. The plea agreement provided that if the defendant's appeal was successful and the suppression ruling was reversed, the State would dismiss the indictment; if the appeal was unsuccessful, the guilty plea would stand. The majority refuses to take any position on this issue, unless one can infer from its silence and its willingness to decide the merits of the suppression issue that it approves of this procedure.

There is no specific statute or provision in our criminal rules authorizing an appeal from a conditional plea. While Rule 11 of the West Virginia Rules of Criminal Procedure, relating to guilty pleas, does not offer any specific guidance, some courts, in reliance on analogous provisions, and even in the absence of such authority, have allowed a conditional plea procedure. *See, e.g., United States v. Moskow,* 588 F.2d 882

(3d Cir.1978); *United States v. Zudick,* 523 F.2d 848 (3d Cir.1975); *United States v. Burke,* 517 F.2d 377 (2d Cir.1975); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974); *State v. Ashby,* 245 So.2d 225 (Fla.1971); *State v. Crosby,* 338 So.2d 584 (La.1976); *People v. Reid,* 420 Mich. 326, 362 N.W.2d 655 (1984); *State v. Sery,* 758 P.2d 935 (Utah App.1988). The usual reason offered in support of such a procedure is judicial economy: "If a case ultimately hinges on the admissibility of evidence whose acquisition is challenged by the defendant on constitutional grounds, forcing the parties to go through an entire trial merely to preserve the suppression issue is a pointless and wasteful exercise." *State v. Sery,* 758 P.2d at 938–39. *See United States v. Moskow,* 588 F.2d at 887–88; *United States ex rel. Rogers v. Warden of Attica State Prison,* 381 F.2d 209 (2d Cir.1967); *State v. Ashby,* 245 So.2d at 228. Indeed, the United States Supreme Court described a New York statute providing for such a procedure as a commendable effort "to relieve the problem of congested criminal trial calendars in a manner that does not diminish the opportunity for the assertion of rights guaranteed by the Constitution."[1] *Lefkowitz v. Newsome,* 420 U.S. 283, 293, 95 S.Ct. 886, 891, 43 L.Ed.2d 196, 204 (1975).

Since we have discretionary appeals in this jurisdiction, I see no reason why we should not sanction the conditional plea procedure. We have already recognized that entry of a guilty plea does not preclude all appellate review. *See Gibson v. Bechtold,* 161 W.Va. 623, 245 S.E.2d 258 (1978) (jurisdictional defects not waived). Moreover, courts which have approved conditional pleas generally consider such a

---

**1.** A number of states allow conditional guilty pleas by statute. *See* Cal.Penal Code § 1538.-5(m) (West 1982); N.Y.Crim.Proc.Law § 710.-70(2) (McKinney 1985); Wis.Stat. § 971.31(10) (1985). In addition, the Federal Rules of Criminal Procedure now expressly provide for a conditional plea procedure. Fed.R.Crim.P. 11(a)(2) (1983).

In *State v. Jones,* 404 So.2d 1192, 1194 n. 5 (La.1981), the Louisiana Supreme Court listed commentators who favored such a procedure:
"See, Uniform Rules of Criminal Procedure 444(d); ABA Project on Minimum Standards

for Criminal Justice, Standards Relating to Criminal Appeals § 1.3(a)(iii) (1969); 3 W. LaFave, Search and Seizure § 11.1(d) (1978); 1 C. Wright, Federal Practice and Procedure (Criminal) § 175 (1969 & 1979 Supp.); Barkai, Accuracy Inquiries For All Felony and Misdemeanor Pleas: Voluntary Pleas But Innocent Defendants? 126 U.Pa.L.Rev. 88 (1977); Comment, Conditioned Guilty Pleas: Post–Guilty Appeal of Nonjurisdictional Issues, 26 U.C.L.A. L.Rev. 360 (1978); Comment, Conditional Guilty Pleas, 93 Harv. L.Rev. 564 (1980)."

plea inappropriate where it purports to preserve for appeal issues that cannot be decided without a fully developed trial or that are not dispositive of the case. *E.g., United States v. Guerro*, 694 F.2d 898 (2d Cir. 1982), *cert. denied*, 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983); *United States v. Thibadeau*, 671 F.2d 75 (2d Cir.1982); *Heuga v. State*, 609 P.2d 547 (Alaska 1980); *Brown v. State*, 376 So.2d 382 (Fla.1979). This requirement assures that the procedure will be used for its intended purpose— to provide a mechanism to resolve complicated constitutional issues that will control the ultimate disposition of the case.

In this case, unfortunately, there is, in my opinion, an insufficient factual record to dispose of the search and seizure issue. The parties do not provide a transcript of the suppression hearing, but instead submit an agreed statement of facts. This statement omits many facts, such as the altitude and flight pattern of the helicopter, the details of the conduct of the officers, and the layout of the property, all of which are necessary to make a correct disposition under the law.

## II.

Independently of this procedural issue, I find myself in disagreement with the majority's decision on the merits of the search and seizure issue.

## A.

In Syllabus Point 1, the majority begins to analyze the aerial observation "under the open fields doctrine." This is plainly contrary to the opinions of the United States Supreme Court, which discuss aerial overflights in terms of the reasonable expectation of privacy test developed in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[2] *E.g., Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989); *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *Dow Chemical Co. v. United States*, 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986).[3]

The most analogous case is *Florida v. Riley, supra*, which, unfortunately, the majority does not discuss. *Riley* involved a helicopter flight at an altitude of four hundred feet over the defendant's greenhouse, which was missing some portion of its roof. The investigating officer could see into the greenhouse with his naked eye and observed what he believed to be marijuana growing. Evidence seized after a warrant was obtained was suppressed by the trial court, and the case was certified to the Florida Supreme Court on the question of whether the aerial observation was "a 'search' for which a warrant [was] required under the Fourth Amendment...." 488 U.S. at ——, 109 S.Ct. at 695, 102 L.Ed.2d at 840. The Florida court answered in the affirmative, and the State appealed.

The United States Supreme Court was sharply divided and issued a plurality opinion. Four justices concluded that no search had occurred because the defendant might reasonably have expected aerial overflights of the sort which exposed the marijuana to the view of the police and that he, therefore, had no reasonable expectation of privacy from aerial surveillance. The plurality opinion placed considerable emphasis on the fact that helicopter flights were not unusual to the area[4] and on the fact that

**2.** We have adopted this doctrine. *Marano v. Holland*, 179 W.Va. 156, 366 S.E.2d 117 (1988); *State v. Schofield*, 175 W.Va. 99, 331 S.E.2d 829 (1985); *State v. Aldridge*, 172 W.Va. 170, 304 S.E.2d 671 (1983); *Blackburn v. State*, 218 W.Va. 96, 290 S.E.2d 22 (1982); *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981).

**3.** Both *Ciraolo* and *Dow Chemical* involved fixed-wing aircraft. In *Ciraolo*, an officer flew over the defendant's home in an airplane and

saw marijuana growing in the fenced back yard. The officer secured a warrant to seize the marijuana based on what he observed during the overflight. The defendant attacked the warrant, claiming that the overflight was a warrantless "search" and that facts obtained as a result of that search could not be used to establish probable cause for the warrant.

**4.** "[T]here is no indication that such flights are unheard of in Pasco County, Florida." 488 U.S. at 450, 109 S.Ct. at 696, 102 L.Ed.2d at 842.

the helicopter's altitude was not unlawful.[5] Additionally, the opinion emphasized that there was no

> "intimation here that the helicopter interfered with respondent's normal use of the greenhouse or of other parts of the curtilage. As far as this record reveals, no intimate details connected with the use of the home or curtilage were observed, and there was no undue noise, no wind, dust, or threat of injury." 488 U.S. at 452, 109 S.Ct. at 697, 102 L.Ed.2d at 843.

It was the emphasis on the lawfulness of the flight that caused Justice O'Connor to reject the reasoning of the plurality opinion. She was of the view that

> "the relevant inquiry after *Ciraolo* is not whether the helicopter was where it had a right to be under FAA regulations. Rather, consistent with *Katz*, we must ask whether the helicopter was in public airways at an altitude at which members of the public travel with sufficient regularity that Riley's expectation of privacy from aerial observation was not 'one that society is prepared to recognize as "reasonable." ' *Katz, supra* [389 U.S.] at 361 [88 S.Ct. at 516]." 488 U.S. at 453, 109 S.Ct. at 698, 102 L.Ed.2d at 845.

Justice O'Connor concluded that there was sufficient evidence of public use to warrant the finding that the defendant had no reasonable expectation of privacy from aerial observation of the greenhouse and, therefore, concurred in the judgment that no search had been conducted.[6]

It is important to recall that in each of these three aerial overflight cases, *Riley, Ciraolo,* and *Dow Chemical,* the Supreme Court was concerned with the validity of the overflight itself, i.e., whether it constituted a "search." If the Supreme Court had been of the view that the "open fields" doctrine was applicable, there would have been no need for such elaborate analysis of the defendant's right to privacy. The Court could simply have done as the majority has done in this case—invoke the "open fields" doctrine on the theory that the police had a lawful right to be where they were when they made the observation.

### B.

Moreover, it seems to me that before any proper analysis of a helicopter overflight case can be made, one has to start with *Riley*'s basic inquiry as to the intrusiveness of the flight. If the flight was intrusive, i.e., a violation of the defendant's reasonable expectation of privacy, then, under *Riley,* a search has occurred. If the search is warrantless, information obtained or goods seized as a result of the search cannot be used against the defendant.

Unfortunately, as I noted earlier, we do not have a developed record on this point. However, it appears that the police here acted in an even more intrusive manner than in any of the overflight cases cited above. In this case, the police landed the helicopter in the yard of the defendant's parents' home and seized the marijuana plants without a warrant. I find nothing in the relevant cases that sanctions this type of warrantless seizure. In fact, in both *Ciraolo* and *Riley,* the authorities obtained warrants before attempting to seize the marijuana sighted during the overflight. I am aware of no other court that has upheld such a seizure without a warrant.[7]

---

**5.** The Supreme Court concluded:

"We would have a different case if flying at that altitude had been contrary to law or regulation.... But it is of obvious importance that the helicopter in this case was *not* violating the law, and there is nothing in the record or before us to suggest that helicopters flying at 400 feet are sufficiently rare in this country to lend substance to respondent's claim that he reasonably anticipated that his greenhouse would not be subject to observation from that altitude." 488 U.S. at 451–452, 109 S.Ct. at 696–97, 102 L.Ed.2d at 842. (Emphasis in original).

**6.** The four justices in the dissent took the position that the defendant's greenhouse, located near his mobile home, was a part of the curtilage and, therefore, imbued with a reasonable expectation of privacy. This was the same reasoning advanced by the four dissenters in *Ciraolo.*

**7.** See *United States v. Marbury,* 732 F.2d 390 (5th Cir.1984); *People v. Joubert,* 118 Cal.App.3d 637, 173 Cal.Rptr. 428 (1981); *People v. Superior Court,* 37 Cal.App.3d 836, 112 Cal.Rptr. 764 (1974); *People v. Sneed,* 32 Cal.App.3d 535, 108 Cal.Rptr. 146 (1973); *Reece v. State,* 152 Ga.App.

Even if the initial "search" issue is bypassed, it is difficult for me to envision how, in the absence of exigent circumstances, the warrantless seizure in this case can be upheld. There is a considerable question as to whether the initial seizure of the marijuana plants by the chicken coop occurred within the curtilage. I sense that even the majority would agree that, under *Dunn*, these plants could not have been seized without a warrant if they were within the curtilage.

### C.

Finally, I believe that the majority has misapprehended the "plain view" doctrine, which, as we discussed in *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980), arises from *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 30 L.Ed.2d 120 (1971). In *State v. Moore*, 165 W.Va. 837, 852–53, 272 S.E.2d 804, 814 (1980), we discussed this doctrine at some length and attempted to show that it is ordinarily limited to situations where law enforcement officials executing a search warrant inadvertently discover contraband or evidence of a crime in plain view. Commentators agree that what the majority has in mind should be given a different label to avoid confusion:

"By comparison, the concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in *Coolidge*, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. . . .

"It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the *Coolidge* plurality opinion. By definition, there is no prior valid intrusion." 1 W. LaFave, *Search & Seizure* 322–23 (2d ed.1987). (Footnote omitted).

Here, the "plain view" on which the majority relies arose not in the context of a search pursuant to a warrant under *Coolidge*, but from the fact that the officers observed the marijuana plants from an allegedly nonintrusive vantage point, which the majority characterizes as an "open field." As LaFave points out, "while the characterization of an observation as a non-search plain view situation settles the lawfulness of the observation itself, it does not determine whether a seizure of the observed object would be likewise lawful." *Id.* at 323. The typical illustration of this distinction is an officer who, while standing on a public sidewalk, looks into the window of a house and observes marijuana plants. While this observation is lawful and could establish probable cause for a search warrant, it does not justify the officer's warrantless entry into the house and seizure of the plants.

Here, even if we assume, as I cannot, that the officers lawfully landed in the defendant's parents' yard and had the right to walk over the hill toward the defendant's home where they saw the marijuana in "plain view" next to his house, they would not have had the right to seize the plants if they were within the defendant's curtilage. This is why the officers in *Unit-*

760, 264 S.E.2d 258 (1979); *State v. Stachler,* 58 Hawaii 412, 570 P.2d 1323 (1977); *State v. Nolan,* 356 N.W.2d 670 (Minn.1984); *State v. Cord,* 103 Wash.2d 361, 693 P.2d 81 (1985); *State v. Myrick,* 102 Wash.2d 506, 688 P.2d 151 (1984).

In note 7, the majority cites two Fourth Circuit cases which it claims support this type of warrantless seizure. On close examination, they are distinguishable. In *Giancola v. State of W.Va. Dep't of Public Safety,* 830 F.2d 547 (4th Cir.1987), the officers in the helicopter saw the defendant start to burn the marijuana plants. A

warrantless seizure was, therefore, justified by exigent circumstances. In *United States v. Bernard,* 757 F.2d 1439 (4th Cir.1985), the court upheld a helicopter landing and subsequent seizure of marijuana plants hanging in the barn. However, this case was decided before *United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), which held the defendant had a sufficient expectation of privacy in a barn, even though it was not located within the curtilage, that a warrant was required before drug paraphernalia located inside could be seized.

*ed States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), after observing drug equipment in the defendant's barn, left without seizing it and secured a warrant. In other words, the "plain view" doctrine does not justify a warrantless intrusive seizure of the plants inside the curtilage anymore than it would justify such a seizure inside the house.

### III.

In summary, reading the majority's opinion, I cannot help but recall the scene in Coppola's *Apocalypse Now*, where the air swarms with helicopters sweeping up valleys and over hills on a search and destroy mission to the righteous chords of Wagner's "Ride of the Valkyries." I am unable to sanction, as the majority has, such a sweeping invasion of privacy rights.