412 S.E.2d 477

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ricky Lee TOWNSEND, Defendant Below, Appellant.**

No. 20111.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 6, 1991.

Joanna I. Tabit, Deputy Atty. Gen. and A. Renee Coe, Asst. Atty. Gen., Charleston, for appellee.

David W. Frame, Clarksburg, for appellant.

PER CURIAM:

The defendant in this proceeding, Ricky Lee Townsend, was sentenced to from one to five years in the state penitentiary for possession of marijuana with intent to deliver. On appeal, he claims that a large cardboard box of marijuana which was admitted into evidence was the product of an illegal search and seizure. He also claims that a small baggie of marijuana seized during the search of his residence was improperly admitted, since the State failed to demonstrate his dominion over the area where it was discovered. Additionally, the defendant claims that the court allowed impermissible prosecutorial argument during the State's closing statement to the jury and that the trial court denied him probation based upon his decision to exercise his constitutional right to appeal. After reviewing the questions presented, as well as the record, this Court concludes that the box of marijuana was illegally

seized and that the trial court erred in admitting it. The defendant's conviction is, therefore, reversed.

On August 17, 1989, the defendant, according to evidence adduced by the State, sold a plastic baggie of marijuana to a youthful, undercover police informant. The sale prompted Deputy Sheriff Jimmy Moss of the Gilmer County Sheriff's Department, who was working with the informant, to obtain a search warrant which authorized the search the defendant's home, which was described as "a white wood frame house located on Alice Rd. in Gilmer County, one story house."

Deputy Moss proceeded to execute the search warrant and search the defendant's home, which was inhabited by the defendant, his wife and children, and the defendant's parents. That search produced a small plastic baggie of marijuana.

In executing the search warrant, Deputy Moss also searched what he considered to be the "curtilage" of the house. The search extended to a hog house which was not mentioned in the warrant and which was located over 200 feet from the defendant's mansion house. The search of the hog house, which was a rather closed structure, not generally open to the public or public view, and actually used for the raising of hogs, produced the large box of marijuana which is at the center of the defendant's principal assignment of error in this case.

After the search, the defendant was placed under arrest and charged with delivery of a controlled substance to a minor in violation of *W.Va.Code*, 60A–4–406, and possession of a controlled substance with intent to deliver in violation of *W.Va.Code*, 60A–4–401(a)(ii).

Prior to the defendant's trial, the defense attorney moved to suppress the box of marijuana seized from the hog house. The circuit court denied that motion and, as a consequence, during trial, the prosecution was permitted to introduce the box of marijuana into evidence.

At the conclusion of the trial, the defendant was acquitted of the charge of delivery of marijuana to a minor. The acquittal

was apparently based upon an entrapment defense which had been advanced by the defendant. The jury, however, found the defendant guilty of possession of a controlled substance with intent to deliver. This action was apparently predicated upon the discovery of the box of marijuana in the defendant's hog house.

On appeal, the defendant's first contention is that the trial court erred in admitting the box of marijuana seized from the hog house. Specifically, he claims that he had a legitimate expectation of privacy in the interior of the hog house and that the State's search of the hog house was outside the scope of the search warrant and consequently illegal.

In this Court's view, the fact that the defendant had a reasonable expectation of privacy in the interior of his hog house is rather clear. If the hog house was within the curtilage of the defendant's residence, then, under pronouncements of the Supreme Court of the United States, he had the same expectation of privacy as he would have in the residence itself. *See, e.g., United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), and *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). On the other hand, if the hog house was outside the curtilage, then, under the particular facts of the case, where the defendant used the building as an adjunct to his farming business, he still had a reasonable expectation of privacy, under the principle that an individual has a reasonable expectation of privacy in a closed area, not generally open to the public or public view, where he engages in business in that area. *See Norman v. State*, 379 So.2d 643 (Fla.1980) [a case dealing with farm outbuilding]; *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); W. La-Fave, *Search and Seizure*, § 2.4(b) (2d ed. 1987), and the many cases cited therein.

The fact that the defendant had a reasonable expectation of privacy in his hog house, does not, of course, mean that law enforcement officers were precluded from

searching it. If the hog house was within the curtilage, in this Court's view, it arguably was within the scope of the search warrant issued, and the search was arguably appropriate.

Recently, in *State v. Forshey,* 182 W.Va. 87, 386 S.E.2d 15 (1989), this Court discussed what constitutes the curtilage of a residence for Fourth Amendment purposes. The Court concluded that a chicken coop located approximately 195 feet away from a mansion house was not within the curtilage. In reaching this conclusion, the Court cited with approval *United States v. Dunn, supra,* where the United States Supreme Court enunciated four factors which impact on the question of whether an area is within the curtilage of a residence for Fourth Amendment purposes. Those factors are the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the house, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. In *Dunn,* the Court concluded that a barn located approximately 180 feet from the house, not within the area surrounding the house that was enclosed by a fence, not being used for intimate activities of the house, and not protected from observation by those standing in open fields, was not within the curtilage. In *Forshey,* the Court, in effect, picked up the guiding principles of *Dunn* and carried them firmly into our law.

In the present case, the record indicates that the hog house in question was further from the defendant's house than either the barn in *Dunn* or the chicken coop in *Forshey.* Although the area was not fenced, the record suggests that the grass in the area immediately surrounding the defendant's mansion house, as well as surrounding certain other outbuildings, was mowed, whereas the grass around the hog house itself was not mowed. The hog house was apparently standing in open woods. There was nothing to suggest that the defendant in any way attempted to surround it with the aura of privacy involved in a home and the immediately surrounding area. Lastly, although the evidence showed that the defendant kept hogs in the house and that they required periodic feeding, there is no indication that the hog house was in any way intimately connected with the activities of the residence itself.

Under the principles in *Forshey* and *Dunn,* this Court believes that the hog house cannot properly be deemed within the curtilage of the defendant's residence. Given this fact, even if the search warrant issued by the State authorized a search of the curtilage of the defendant's residence, the hog house was not within the scope of the warrant. Accordingly, this Court concludes that the search of the hog house was a warrantless search.

In syllabus point 1 of *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980), this Court pointed out that:

> Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.

Although warrantless searches are often allowable in noncurtilage areas under the so-called "plain view" or "open fields" doctrines, the Court is unaware of any case which indicates that a closed structure, closed to public view, even though located in an open field, is itself deemed to be an open field for the open fields doctrine.[1]

---

1. There are many cases in West Virginia discussing the "plain view" and "open fields" doctrines. *See, e.g., State v. Forshey,* 182 W.Va. 87, 386 S.E.2d 15 (1989); *State v. Woodson,* 181 W.Va. 325, 382 S.E.2d 519 (1989); *State v. Barker,* 176 W.Va. 553, 346 S.E.2d 344 (1986); *State v. Clements,* 175 W.Va. 463, 334 S.E.2d 600 (1985), *cert. denied* 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137, *State v. Curtin,* 175 W.Va. 318, 332 S.E.2d 619 (1985); *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982); *State v. Weigand,*

Unlike the situation presented in *State v. Forshey, supra,* where the contraband involved was in relative public view, the evidence in the present case suggests that the marijuana in question was out of public view, and in an enclosed area being used in conjunction with the defendant's raising of hogs.

Given the overall circumstances in the present case, where the hog house was not within the curtilage of the defendant's mansion house, and consequently not within the scope of the warrant, and where the defendant had a reasonable expectation of privacy in the hog house, this Court believes that the State's warrantless search of the hog house was improper and the seizure of the box of marijuana from it was illegal. In such circumstances this Court has indicated in syllabus point 1 of *State v. Davis,* 170 W.Va. 376, 294 S.E.2d 179 (1982), that:

> The general rule is that where there is an illegal seizure of property, such property cannot be introduced into evidence, and testimony may not be given in regard to the facts surrounding the seizure of the property.

*See also, Silverthorne Lumber Co. v. United States, supra.* In *State v. Davis, supra,* the Court indicated that where there was a violation of this rule, the violation would support a reversal of a criminal conviction and compel a new trial. The Court believes that such is the circumstance in the present case, and the defendant's conviction must be reversed because of the admission of the box of marijuana seized from the hog house, and he must be awarded a new trial.

The Court notes that defendant also argues that his conviction should be overthrown since the evidence of his dominion and control over the contraband discovered inside his house was so tenuous as to fail to show the defendant's connection with the contraband.

This Court, in syllabus point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), stated that:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

The marijuana seized by the police officers in the present case was seized from a residence belonging to or inhabited by the defendant, as well as a hog house inhabited by him. In addition to the evidence relating to the seizure of the marijuana, there was evidence that the defendant had, a short time previously, sold marijuana to an undercover informant.

The evidence relating to the sale to the undercover informant connects the defendant in more than a tenuous way with the marijuana which was seized from the defendant's house. In view of this fact, this Court cannot say that the evidence, when viewed in the light most favorable to the prosecution, fails to establish the defendant's guilt or that the evidence was manifestly inadequate and that consequent injustice has been done. Under the circumstances, the Court believes that the defendant's argument with regard to the tenuousness of his dominion over the marijuana in his house is without merit.

The Court notes that the defendant also claims that the trial court erroneously allowed impermissible prosecutorial comment during the State's closing statement to the jury and further claims that the trial court denied him probation based upon his decision to exercise his constitutional right to appeal. Since a new trial is necessary, and since the circumstances will almost invariable be different during the new trial and its

169 W.Va. 739, 289 S.E.2d 508 (1982); *State v.* Vance, 168 W.Va. 666, 285 S.E.2d 437 (1981).

sequel, the Court does not feel that it is necessary to discuss those points.[2]

Because the Court has concluded that the trial erred in failing to suppress the marijuana seized from the hog house, the judgment of the Circuit Court of Gilmer County is reversed, and this case is remanded for a new trial.

*Reversed and remanded.*

2. The Court, however, notes that there is guidance for prosecutorial argument in *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983), and *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982) and the cases cited therein; and as a general rule the decision to grant probation or not is within the sound discretion of the trial court, and this Court will not abuse the trial court's decision in the absence of a showing of abuse of discretion. *State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1981).