CHARLES CORNMAN, SR. *v.* STATE OF INDIANA.

[No. 1-972A70. Filed April 19, 1973.]

*William K. Steger,* of Bloomington, for appellant.

*Theodore L. Sendak,* Attorney General, *Rober E. Dwyer,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant, Charles Cornman, Sr., was charged with the offense of theft. The amended affidavit alleged that the defendant-appellant ". . . knowingly, unlawfully and feloniously exerted unauthorized control over the property of Benovele Lincoln Mercury Automobile Dealership, . . . by concealment with the intent then and there to conceal the property in such manner as knowingly to deprive the owner permanently of the use and benefit of said property."

After a plea of not guilty, jury trial was waived and the defendant-appellant was tried by the court and found guilty and was sentenced, under the theft act, to prison for one to ten years and fined $100.00.

Defendant-appellant timely filed his motion to correct errors, setting forth four specifications and has waived the fourth specification by not arguing the same in his brief. Rule AP. 8.3(A)(7).

The three specifications of error relied upon for reversal are, briefly:

(1) Whether the evidence is sufficient to support the verdict;

(2) Whether the court prematurely terminated the defendant's case, thus denying defendant a fair trial; and

(3) Whether the police surveillance of defendant's property constituted an illegal search and seizure.

The motion to correct errors was by the court overruled, praecipe was filed for the record and this appeal is now before us.

The facts are that on March 30, 1970, at about the hour of midnight, a break-in at the Benovele Lincoln Mercury Dealership, located at 319 North College Avenue in Bloomington was discovered and reported to the police. Investigation was made and inventory at the dealership was made and two Mercury vehicles and certain auto parts and accessories were discovered missing, along with a cutting torch and gas and oxygen tanks which were a part thereof.

Earlier that evening, one Ferguson Mills, who was bailiff of the Monroe Circuit Court and who was working on his Master's Degree at Indiana University, was a passenger in a motor vehicle which stopped at a street intersection and he observed a blue or green Dodge pickup truck towing a light brown or tan colored Mercury automobile. Mr. Mills identified the defendant-appellant as being alone in the Dodge pickup and as being the driver thereof from a photograph presented to him, and on a face to face confrontation in the court room identified defendant-appellant as the driver of the Dodge pickup truck he had seen the night of the theft.

The automobile which had been towed by defendant-appellant was later found near where it had been seen and was burning and was identified by the State Police as having been stolen from the Benovele Lincoln Mercury Dealership.

The police in their investigation discovered a truck matching a description given by the witnesses in defendant-appellant's driveway. They talked to him in the driveway next to his home which was located near Bloomington and which had a stone quarry on the rear thereof which was used as a public dump. The entire area outside of the public dump and where

the home was located, along with several house trailers, was a wilderness of white pines that one could not see through from any public highway.

The police, after talking to Mr. Cornman in his driveway, walked back to the stone quarry and observed three individuals who, upon seeing them, ran into Mr. Cornman's mobile home.

Another car was subsequently found stripped and containing pine needles in its interior.

The police used a State Police helicopter to fly over this area and determined that in the center of all the pines there was a clearing and it was used as what appeared to be a junk yard and dump. They also approached the place from two private roads and could not discover any boundary line between the Cornman property and his neighbors, although Cornman said that he had No Trespassing signs all the way around his property and the police were trespassers at any time they set foot thereon. This evidence is disputed by a police officer who testified that he was all around the property and did not see such signs.

The police, after fortifying themselves with a search warrant duly served the same upon defendant-appellant Cornman and searched the premises and found a seat to a Mercury automobile which was identified as being out of the Mercury taken from the Benovele Dealership on the night defendant-appellant was seen towing the other Mercury and which second car had not been burned. The police also found a cutting torch and oxygen and gas tanks as a part thereof which was identified as belonging to the Benovele Dealership and also found many accessories and parts, including spark plugs, which were identified as having been removed from the Benovele Dealership on the night in question. The cutting torch and tanks had been very well covered with pine needles and branches in order, it appeared, to hide them from anyone who might be on defendant-appellant's premises.

Defendant-appellant maintains that the circumstantial evi-

dence used by the State of Indiana in his trial and conviction was not adequate to sustain the conviction for the reason all reasonable hypothesis of innocence must be excluded. He cites and relies on the case of *Hardesty* v. *State* (1967), 249 Ind. 518, 231 N.E.2d 510, wherein the court said:

"It is well settled in Indiana that a conviction may be affirmed by this Court on circumstantial evidence alone, *Bradley* v. *State* (1964), 244 Ind. 630, 195 N.E.2d 347. However, such evidence must preclude every other reasonable inference of innocence.

On appeal from a criminal conviction where the sufficiency of the evidence is challenged, the Supreme Court cannot weigh the evidence, but will consider only the evidence most favorable to the State, and the reasonable inferences that may be drawn therefrom, to determine whether the jury was warranted in returning a verdict of guilty. *Gilmore* v. *State* (1951), 229 Ind. 359, 98 N.E.2d 677; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N.E.2d 185."

Defendant-appellant further contends that for the conviction to stand on circumstantial evidence the State has a burden to show that defendant had control of the goods and that such control and concealment were exclusive. He further made the analogy to the former crime of larceny, where it was often held that the unexplained, exclusive possession of recently stolen property constitutes a circumstance from which a court or jury may draw an inference of guilt, and relied on *Gilley* v. *State* (1949), 227 Ind. 701, 88 N.E.2d 759. In *Gilley*, at page 705, the court said:

". . . The rule is that unexplained, exclusive possession of recently stolen property constitutes a circumstance from which a court or jury may draw an inference of guilt. . . ."

The court said, further, that the owner of the property involved in that action positively identified it as having been taken from his store and it was found in the automobile occupied by the two appellants only a few minutes after it was stolen. Our Supreme Court said:

". . . The circumstance was sufficient to permit the trial court to draw an inference of guilt and convict the appellants. . . ."

Further, defendant-appellant relies on the case of *Underhill* v. *State* (1966), 247 Ind. 388, 216 N.E.2d 344, on his proposition that too great a time had elapsed before the property was discovered in the possession of the defendant and that he had had exclusive possession during that period of time.

The court said, in *Underhill, supra,* at page 390:

". . . Normally, an elapse of a few hours or a day or two or even a week under some circumstances would create such an inference, particularly if the property was concealed. Where any considerable length of time has elapsed there must be some showing between the time of the larceny or burglary and the time the defendant is discovered in possession of the property that he has had the exclusive possession during that period of time. . . ."

The evidence is that the day following the theft of the motor vehicles, accessories, et cetera, the police were at the defendant-appellant's place making an investigation and two days later were back with a search warrant and found and confiscated the stolen property which was all identified as having been stolen from the Benovele Dealership.

In the case of *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554, 556, Justice Prentice of our Supreme Court, in speaking of circumstantial evidence, said:

". . . The evidence in this case is circumstantial, but conviction may be sustained by circumstantial evidence alone, and we can not say that based on that evidence, although only circumstantial, and the reasonable inferences to be drawn therefrom the evidence is insufficient as a matter of law. Where the sufficiency of circumstantial evidence is in question, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. . . ."

Under the law as determined by our Supreme Court, we find that in the case at bar there was an abundance of evi-

dence from which inferences could reasonably be drawn tending to support the finding of the trial court.

Defendant-appellant claims the trial court prematurely caused the termination of the trial, thereby denying him a fair trial. The contention is based upon his charges that he only had one witness in court and that was the defendant-appellant, at the time the State rested after the State had produced a list of thirteen witnesses and used only eight. At the conclusion of defendant's evidence it was nearing 5:00 o'clock P.M. and defendant-appellant informed the court that he had two additional witnesses but they were not available at that time. One of the witnesses was Charles Cornman, Jr., son of the defendant-appellant, who the defendant-appellant thought was in Columbus, Indiana, but was not sure and did not know when he could produce him as a witness. The court offered to continue the trial until 8:30 o'clock A.M. the following day, which was a Saturday. Defendant-appellant did not make any record on this and make a formal written request for a continuance with an affidavit showing why he was surprised, but immediately rested his case. On rebuttal, a son-in-law of the defendant-appellant was called by the State and he testified that he had seen Charles Cornman, Jr. that day and that Cornman, Jr. was frequently in the residence of the defendant-appellant.

Defendant-appellant further complains that the Monroe Circuit Court did not regularly hold court on Saturday and the failure to continue the case until a later date prejudiced defendant-appellant's rights. We cannot find any merit to this contention. Courts are held at the convenience of the judge and ordinarily within certain rules and prescribed times for the conduct of trials. However, it is not infrequent that trials may hold over into the night or be conducted on Saturday and sometimes juries are locked up through an entire week-end, in our form of the administration of justice.

The third and last claimed error is that the police sur-

veillance of defendant-appellant's property prior to the issuance of the search warrant constituted an illegal search and seizure. To sustain his contention here defendant-appellant charges that police officers entered the Cornman premises without a search warrant and without consent of defendant and observed the three male subjects, none of whom was the defendant, fleeing the quarry area on the property, and that afterward, and still without a search warrant or consent of defendant-appellant, police officers re-entered the property and discovered an acetelyne tank belonging to the Benovele Dealership and it was only after these two incidents that a search warrant was secured.

Defendant-appellant contends that the Constitution of the United States and that of Indiana gives a citizen the right to be secure against unreasonable search and seizure. With that we agree, and believe in.

The State, in its answer brief, contends that specification three is waived by the appellant for the reason he cited no authority and thereby waived any question he had under Rule AP. 8.3(A)(7) and cited *Cohen* v. *Burns* (1971), 149 Ind. App. 604, 274 N.E.2d 283, *Miller* v. *State* (1971), 256 Ind. 296, 268 N.E.2d 299, and other cases.

In view of the fact this is a criminal case, and it has been our policy to, where we could, pass on the case on its merits, we shall discuss this question here the same as if it had been properly briefed.

Although defendant-appellant claims that his place was well covered, at its outer boundaries with signs warning people to stay off, the place was described by Officer Richard McMurry as follows: "I didn't know where any boundaries was; it was just one big woods . . . didn't cross any fences that I remember.

Tom Simes, a detective with the Bloomington Police Department, who investigated the case, was asked specifically on cross examination whether the Cornman property he inspected was posted all the way around its perimeter with No Trespassing signs. Mr. Simes' answer was simply "No."

This evidence being disputed between the respective parties now makes the question of posting the place against trespassers a question to be passed on by the court. There was sufficient evidence on which the court could find as he did.

There is no evidence that the dwelling house of defendant-appellant was searched before the search warrant was served upon him. Inasmuch as the bulk of defendant-appellant's property was a dense woods, impossible of visual penetration from the ground, and there was a clearing inside the same which was used for wrecking automobiles and as a dump in an old quarry, defendant-appellant's contention that the search and seizure of the contraband was a violation of his constitutional rights and illegal is without merit. The provisions of the Fourth Amendment of the United States Constitution guarding against illegal search and seizure are not applicable to open fields and, therefore, are not applicable to wooded areas, which would be in the same category. Justice Holmes, speaking for the court in *Hester* v. *United States* (1924), 265 U.S. 57, 59, 44 S. Ct. 445, 446, 68 L. Ed. 898, stated:

> ". . . the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law."

This case was upheld in *United States* v. *Hassell* (CA 6, 1964), 336 F. 2d 684, wherein the Court stated, at page 685: "[U]nder federal law the search of open fields without a search warrant is not constitutionally 'unreasonable.'"

We now hold that the activities of the police in and around the stone quarry and the wooded area and cleared area of defendant-appellant's premises was not a violation of defendant-appellant's constitutional rights as afforded him by the Fourth Amendment and the evidence adduced at trial was not tainted by any unlawful search and seizure.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 294 N.E.2d 812.