STATE OF WEST VIRGINIA

*v.*

DAVID WEIGAND

(No. 15056)

Decided March 26, 1982.

*James C. Recht* for appellant.

*Chauncey H. Browning,* Attorney General, *Richard S. Glaser, Jr.,* Assistant Attorney General, *Fredrick S. Wilkerson,* Law Clerk, for appellee.

MILLER, CHIEF JUSTICE:

This is an appeal by David Weigand from an order of the Circuit Court of Lewis County sentencing him to six months in the county jail and fining him $1000 for

possession of marijuana. The defendant's only claim of error is that the trial court erred in admitting into evidence the marijuana plants seized from his property without a search warrant. We conclude that the evidence was properly seized under the "open fields" doctrine and affirm his conviction.

On August 28, 1978, two Lewis County deputy sheriffs, while patrolling Lewis County Route 46, spotted what they believed to be marijuana growing in a field or garden about 150 to 300 feet from the defendant's house. The plants were visible from the road. On returning to the county seat, they reported their discovery to the Sheriff. The next day the Sheriff surveyed from the road the area in question and concluded that the plants were marijuana. He then returned to the county jail where he assembled all available deputies. Without obtaining a warrant, he proceeded to the defendant's house, arrested him and seized a number of marijuana plants from the property.

In Syllabus Point 1 of *State v. Moore*, ____ W. Va. ____, 272 S.E.2d 804 (1980), we set out this rule which was taken from our earlier case of *State v. Duvernoy*, 156 W. Va. 578, 583, 195 S.E.2d 631, 634-35 (1973), which in turn cited *Coolridge v. New Hampshire*, 403 U.S. 443, 454-55, 29 L.Ed.2d 564, 576, 91 S.Ct. 2022, 2032 (1971):

> "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative."

The origin of the "open fields" doctrine was *Hester v. United States*, 265 U.S. 57, 68 L.Ed. 898, 44 S.Ct. 445 (1924), where the United States Supreme Court sanctioned a

warrantless seizure[1] of a jug containing illegal liquor. A revenue agent observed the defendant outside of his father's house handing a bottle to a person who was believed to be a customer for bootleg whiskey. The defendant became alarmed and ran across an open field. As he ran he dropped a jug which was later examined by the revenue agent. The jug proved to contain bootleg whiskey. Justice Holmes speaking for the Court stated:

> "[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226." 265 U.S. at 59, 68 L.Ed. at 900, 44 S.Ct. at 446.

Following *Hester* many courts held that open fields were not constitutionally protected under the Fourth Amendment provisions and these decisions dealt with defining what constituted an "open field." Over the years nearly any area not falling within the curtilage of a dwelling[2] was deemed to be an "open field." The fact that

---

[1] Technically, there was no seizure since as the Court stated: "[T]here was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned." 265 U.S. at 58, 68 L.Ed. at 900, 44 S.Ct. at 446.

[2] A "curtilage" has been defined in *United States v. Van Dyke*, 643 F.2d 992, 993 note 1 (4th Cir. 1981) as:

> " '[A]n area of domestic use immediately surrounding a dwelling and usually but not always fenced in with the dwelling.' *United States v. La Berge*, 267 F.Supp. 686, 692 (D. Md. 1967)."

The curtilage also includes outbuildings adjacent to the dwellings, *Rosencranz v. United States*, 356 F.2d 310 (1st Cir. 1966). Such outbuildings must be customarily used with the dwelling. *De Montmorency v. State*, 401 So.2d 858 (Fla. App. 1981). It seems that a higher expectation of privacy would exist in a building contained in or outside the curtilage. *E.g.*, *Fullbright v. United States*, 392 F.2d 432 (10th Cir. 1968); 1 LaFave, *Search and Seizure* 313 *et seq.* (1978 ed.). Some courts since *Katz v. United States*, 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507 (1967), have questioned whether an open area within the curtilage which contains contraband is protected under the Fourth Amendment where there is no other indicia of expectation of privacy. *E.g.*, *United States v. Fluker*, 543 F.2d 709 (9th Cir. 1976); *State v. Crea*, 233 N.W.2d 763 (Minn. 1975). We need not address the

an area was not actually a field or open was deemed to be of little importance. Areas held to be "open fields" include fenced land, *Stark v. United States*, 44 F.2d 946 (8th Cir. 1930); land posted with no trespassing signs, *McDowell v. United States*, 383 F.2d 599 (8th Cir. 1967); wooded areas, *Bedell v. State*, 257 Ark. 895, 521 S.W.2d 200 (1975), *Cornman v. State*, 156 Ind. App. 112, 294 N.E.2d 812 (1973); vacant lots in urban areas, *State v. Stavricos*, 506 S.W.2d 51 (Mo. App. 1974); and, open waters, *Nathanson v. State*, 554 P.2d 456 (Alaska 1976). *See* 1 LaFave, *Search and Seizure* §2.4 (1978 ed.).

In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, (1967), the concept of reasonable expectation of privacy was introduced and the Court concluded that what areas were constitutionally protected could not be resolved by a geographic or property analysis since "the Fourth Amendment protects people not places." 389 U.S. at 351, 19 L.Ed.2d at 582, 88 S.Ct. at 511. *Katz* is regarded as modifying *Hester* and, as a consequence, subsequent cases have generally held that the "open fields" doctrine must also take into account the question of whether the area under consideration bore some indicia of an expectation of privacy. *United States v. Van Dyke*, 643 F.2d 992 (4th Cir. 1981); *Pistro v. State*, 590 P.2d 884 (Alaska 1979); *De Montmorency v. State*, 401 So.2d 858 (Fla. App. 1981); *Giddens v. State*, 156 Ga. App. 258, 274 S.E.2d 595 (1980), *cert. denied*, 450 U.S. 1026, 101 S.Ct. 1733, 68 L.Ed.2d 220, (1981); 1 LaFave, *Search and Seizure* 335-36 (1978 ed.).

The "open fields" doctrine continues to retain vitality although the Supreme Court's most recent pronouncement has not been entirely illuminating. In *Air Pollution Variance Board v. Western Alfalfa*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), a field inspector entered on the defendant's premises to secure smoke emission tests. The Court admitted that "we are not advised that he was on the premises from which the public was excluded," and concluded that "he is well within the 'open fields' excep-

---

curtilage issue since in the present case the area was sufficiently removed from the dwelling house as not to be within the curtilage.

tion to the Fourth Amendment approved in *Hester*." 416 U.S. at 865, 94 S.Ct. at 2116, 40 L.Ed.2d at 611. *Katz, supra,* was not cited nor was there any extended discussion of the expectation of privacy principle.

We need not for purposes of this case embark on an extended analysis of the "open fields" doctrine. It is sufficient to state that where under the "open fields" exception law enforcement officials from a public highway observe contraband or evidence of a crime that is plainly visible on property which carries no indicia that the owner or possessor thereof had a reasonable expectation of privacy the same may be seized without the necessity of first obtaining a warrant.

In at least one of our earlier cases decided prior to *Katz* involving a warrantless entry into a locked baggage locker at a bus station, we referred to the "open fields" doctrine and appeared to sanction its use. *State v. Bruner,* 143 W. Va. 755, 105 S.E.2d 140 (1958), *cert. denied, Bruner v. Adams,* 358 U.S. 937, 79 S.Ct. 328, 3 L.Ed.2d 309 (1959). It is doubtful that *Bruner* would be good authority after *Katz* because of the reasonable expectation of privacy arising from the locked locker.

In the present case, the law enforcement officials sighting from a public highway the marijuana plants which were not surrounded by any indicia of privacy were entitled to go upon the property and seize them without a warrant. Similar conclusions have been reached in other jurisdictions. *United States v. Van Dyke,* 643 F.2d 992 (4th Cir. 1981); *Pistro v. State,* 590 P.2d 884 (Alaska 1979); *Burkholder v. Superior Court,* 96 Cal.App.3d 421, 158 Cal. Rptr. 86 (1979); *Dean v. Superior Court of Nevada County,* 35 Cal. App.3d 112, 110 Cal. Rptr. 585 (1973); *De Montmorency v. State,* supra; *Giddens v. State,* supra, *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977) (public airway); *State v. Boone,* 293 N.C. 702, 239 S.E.2d 459 (1977); 68 Am.Jur.2d *Search & Seizure* § 20 (1973).

Based on the foregoing reasons, we find the seizure of the plants to have been proper and, therefore, their

introduction into evidence was not error. Consequently, the judgment of the trial court is affirmed.

*Affirmed.*