656 S.E.2d 471

**STATE of West Virginia, Appellee,**

v.

**Kenneth BOOKHEIMER, Defendant Below, Appellant.**

**State of West Virginia, Appellee,**

v.

**Jessica Marie Tingler, Defendant Below, Appellant.**

Nos. 33289, 33290.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2007.

Decided Nov. 8, 2007.

---

Daniel R. Grindo, Gassaway, WV, for Appellant, Kenneth Bookheimer.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, for Appellee, State of West Virginia.

G. Ernest Skaggs, Skaggs & Skaggs, Fayetteville, WV, for Appellant, Jessica Marie Tingler.

PER CURIAM.

The appellants, Kenneth Bookheimer and Jessica Marie Tingler (hereinafter "appellants" collectively, or "Mr. Bookheimer" and "Ms. Tingler" individually), appeal from separate sentencing orders entered May 11, 2006, by the Circuit Court of Braxton County. In those orders, the circuit court sentenced each of the appellants to one to five years' imprisonment on a charge of conspiracy and to two to ten years' imprisonment on a charge of operating a clandestine drug laboratory, both sentences to be served consecutively. On appeal, the appellants assert three common assignments of error, and Ms. Tingler asserts one additional assignment of error.[1] Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we determine that the circuit court erred by allowing the introduction of evidence seized as a result of an illegal search and seizure.[2] Thus, the circuit court's denial of the motion to sup-

---

1. The appellants argue that the circuit court: (1) erred in denying the motion to suppress evidence obtained as a result of an illegal search, (2) improperly allowed the State to introduce expert testimony as to the identity of certain substances without a proper foundation, and (3) improperly failed to dismiss the conspiracy charge after the State failed to prove a prima facie case. Ms. Tingler's fourth assignment of error alleges that the circuit court erred in proceeding to trial when she was incompetent due to drug abuse.

2. Our reversal based on the determination that the search and seizure was unlawful disposes of our need to address the other three assignments of error. Therefore, this Opinion will not address the merits of the mooted assignments of error.

press is reversed, and the subsequent convictions are vacated. Both cases are remanded for a new trial consistent with this Opinion.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Jessica Marie Tingler lived in Braxton County, West Virginia. Kenneth Bookheimer lived with Ms. Tingler at her rented residence. On February 9, 2005, Braxton County 911 received an anonymous call of a domestic dispute involving gunshots and yelling and screaming at Ms. Tingler's residence. Two deputies were dispatched to the scene.[3] When they arrived, they saw Ms. Tingler appear from the side of the trailer. Her behavior was described as hysterical, and it was reported that she was yelling and screaming. When questioned by the deputies, Ms. Tingler denied any domestic dispute. Further, she told the police they were not needed, were not wanted, and to leave. When questioned as to Mr. Bookheimer's location, Ms. Tingler told the police that he was inside the residence.

One of the officers opened the front door and identified himself. Mr. Bookheimer responded that he was in the bathroom and would be out once he was finished.[4] The officers proceeded to the bathroom door. Upon reaching the bathroom door, the officers noted materials normally used in the manufacture of methamphetamine in plain view in the nearby bedroom. The deputies procured Mr. Bookheimer and removed him from the residence. The officers asked for consent to search, which was denied. Both Ms. Tingler and Mr. Bookheimer were detained outside the trailer, while one of the officers went to the magistrate court to obtain a search warrant. The basis of the search warrant was to search and obtain evidence showing the operation of a clandestine drug laboratory. Upon execution of the warrant, the officers obtained various materials, all allegedly used in the manufacture of methamphetamine.

Both Ms. Tingler and Mr. Bookheimer were indicted for operation of a clandestine drug laboratory and conspiracy. A suppression hearing was held on November 28, 2005, at which the appellants argued that the search was illegal and that all materials found therefrom should be suppressed. The circuit court denied the motion to suppress on the basis that exigent circumstances existed. Specifically, the order by the circuit court entered December 5, 2005, found as follows:

4. The defendant Jessica Tingler was found outside the residence in what the officers described as an agitated state when they arrived.[5]

5. The defendant Jessica Tingler did not give the officers consent to enter or search the residence and in fact objected to a search and denied that any incident of domestic violence had taken place.

6. The officers were aware the residence was shared by the defendant Kenneth Bookheimer, and they did not know if he had been injured in the reported incident of domestic violence or if he was in the residence with a weapon.

7. That exigent and emergency circumstances existed in that the defendant Kenneth Bookheimer could have presented a

---

3. En route to the scene, the responding deputies were notified by dispatch that the residence was believed to have drugs on the premises.

4. The residence was described as a small mobile home with all rooms in close proximity to each other.

5. As testified to at the suppression hearing by one of the responding deputies,

> I initially uh, noticed a female, uh, Jessica Tingler ... running around the uh, what, what appeared to me facing the front of the trailer would have been running around the left side of the trailer. Uh, at that point, uh, she was yelling and, and making some type of garble. Uh, I immediately went towards her direction.... And, the only thing she could say is, we shouldn't have been there. We're not wanted here, uh, don't be around here, uh, you need to leave, um, uh, we did ask her if there was anybody else there. She advised us that Kenny was inside the house.
>
> ....
>
> I saw her running around going hysterical, around the back side of the trailer. Which is sometimes evidence to me to be a domestic in progress.

danger to the officers or others if he had been inside the residence with a weapon.

8. That exigent and emergency circumstances existed in that the defendant Kenneth Bookheimer could have been inside the residence injured based upon the report of domestic violence with a weapon being discharged and the agitated state in which the officers found the defendant Jessica Tingler.

9. The officers had a right to enter the residence based on the said exigent and emergency circumstances to determine if the defendant Kenneth Bookheimer was present and armed with a weapon or injured.

10. The officers found what they believed to be evidence of a clandestine methamphetamine laboratory in plain view when they entered the residence in search of the defendant Kenneth Bookheimer.

. . . .

12. The defendant Kenneth Bookheimer did not give the officers consent to search the residence and in fact objected to a search.

. . . .

14. A search warrant for the defendants' residence was properly issued by [the magistrate court].

15. The evidence sought to be suppressed was seized under the search warrant.

(Footnote added).

The case proceeded to a joint trial. Ms. Tingler and Mr. Bookheimer were found guilty of all charges and were sentenced to one to five years' imprisonment on the conspiracy charge and to two to ten years' imprisonment on the clandestine drug laboratory charge, with both sentences to be served consecutively. They appeal their convictions and sentencing to this Court.

## II.

## STANDARD OF REVIEW

■ The crucial issue before this Court relates to the circuit court's denial of a motion to suppress evidence. We have previously explained in Syllabus point one of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), as follows:

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Further,

In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

Syl. pt. 2, *Lacy, id.* We have also explained that "we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action." *State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995). Mindful of these applicable standards, we now consider the substantive issues raised herein.

## III.

## DISCUSSION

■ On appeal to this Court, Ms. Tingler and Mr. Bookheimer argue three common assignments of error. The appellants argue together that the circuit court: (1) erred in denying the motion to suppress evidence obtained as a result of an illegal search, (2) improperly allowed the State to introduce expert testimony as to the identity of certain substances without a proper foundation, and

(3) improperly failed to dismiss the conspiracy charge after the State failed to prove a prima facie case. Ms. Tingler's fourth assignment of error alleges that the circuit court erred in proceeding to trial when she was incompetent due to drug abuse. The State contends that the circuit court was correct on all decisions, and that the convictions and the sentencings should be affirmed. We determine that the search was illegal and that all evidence flowing therefrom should have been suppressed. Thus, this Opinion will discuss the illegal search and seizure, without need to analyze the other asserted assignments of error that are now moot. The circuit court's denial of the motion to suppress is reversed, and the subsequent convictions are reversed.

 The issue of whether a search and seizure is proper is governed by both state and federal constitutions.[6] As has been previously recognized by this Court,

"[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative." Syllabus Point 1, *State v. Moore*, [165] W. Va. [837], 272 S.E.2d 804 (1980) [, *overruled on other grounds by State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991) ].

Syl. pt. 1, *State v. Weigand*, 169 W.Va. 739, 289 S.E.2d 508 (1982). More specific to the present case,

[a]lthough a search and seizure by police officers must ordinarily be predicated upon a written search warrant, a warrantless entry by police officers of a mobile home was proper under the "emergency doctrine" exception to the warrant requirement, where the record indicated that, rather than being motivated by an intent to make an arrest or secure evidence, the police officers were attempting to locate an injured or deceased child, which child the officers had reason to believe was in the mobile home, because of information they received immediately prior to the entry.

Syl. pt 2, *State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983). Stated more generally,

the emergency doctrine has been defined in various ways and must be considered upon a case by case basis.... [T]he emergency doctrine may be said to permit a limited, warrantless search or entry of an area by police officers where (1) there is an immediate need for their assistance in the protection of human life, (2) the search or entry by the officers is motivated by an emergency, rather than by an intent to arrest or secure evidence, and (3) there is a reasonable connection between the emergency and the area in question.

*Cecil*, 173 W.Va. at 32, 311 S.E.2d at 149 (internal citations omitted). Thus, the case-by-case analysis rests on the reasonableness of the actions of the police and has been explained in the following manner:

the "reasonableness" of a warrantless search or entry under the emergency doctrine is established by the "compelling need to render immediate assistance to the victim of a crime, or insure the safety of the occupants of a house when the police reasonably believe them to be in distress and in need of protection."

*Id.*, 173 W.Va. at 32, 311 S.E.2d at 150 (internal citations omitted).

---

6. Amendment IV to the United States Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, W. Va. Constitution, art. III, § 6, provides as follows:

The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

Applying the above-cited legal principles to the present case, we find it unreasonable for the officers to have conducted a warrantless entry and search. At the suppression hearing, the responding officers testified that Ms. Tingler clearly told them that there was no domestic dispute, they were not wanted, they were not needed, and that she wanted them to leave. In the face of this clear rebuke, it would not be reasonable for an officer to proceed to enter and search the premises unless there was some other condition lending to an emergency circumstance.[7]

■ While the officer testified that Ms. Tingler was acting in a "hysterical" manner, a review of the record reveals the contrary. After listening to the officer's testimony at the suppression hearing, the trial judge could not agree that "hysterical" was a proper characterization of Ms. Tingler's behavior. From the bench, the judge "note[d] that upon arriving at the scene the testimony of [the] Deputy ... was that Ms. Tingler was yelling, and was in a state of less than quite [sic] demeanor. I would not say that she was irrate [sic], but it appears that there was yelling by Ms. Tingler[.]" Moreover, the order stemming from the suppression hearing referred to Ms. Tingler's demeanor as "agitated." Being less than "irate" and "agitated" does not lend support to the officer's contention that Ms. Tingler was hysterical. An objective review of the record reveals a woman who was angry and who was, indeed, probably yelling. However, her anger and yelling were not caused by circumstances occurring prior to the arrival of the officers. Rather, her agitation was aimed at the fact that the officers were present on her property. Thus, Ms. Tingler's behavior did not create an emergency or an exigent circumstance justifying entry into the residence.

The United States Supreme Court recently authored an opinion supportive of our conclusion that the warrantless entry and search of the appellants' residence was unconstitutional. *See Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).[8] In *Randolph,* the police were called by the estranged wife to come to her aid in a domestic dispute. Upon their arrival, the wife informed the police that the husband was a drug addict and that there was evidence of cocaine in the house. When asked for consent to search the house, the wife agreed, but the husband refused. The police entered with the wife and after seeing some evidence of cocaine use, left and obtained a search warrant. The police then returned, finished the search, and procured evidence.

The *Randolph* Court ultimately held "that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident" *Randolph,* 547 U.S. at 120, 126 S.Ct. at 1526, 164 L.Ed.2d at 226 (footnote omitted). The ruling determined that the evidence should have been suppressed as illegally obtained against the husband. In drawing this conclusion, the high court determined that there was no protective need indicated for the police to enter the home. In so deciding, the opinion stated: "The State does not argue that she gave any indication to the police of a need for protection inside the house that might have justified entry into the portion of the premises where the police found the powdery straw[.]" *Id.,* 547 U.S. at 123, 126 S.Ct. at 1528, 164 L.Ed.2d at 227.

Likewise, neither resident in the present case indicated a need for protection from the

7. The facts show that the officers were warned, en route, that the residence possibly contained drugs. Thus, the facts suggest that the deputies' entry into the residence was not motivated by a possible emergency, but rather was motivated by an intent to arrest or secure evidence.

8. We wish to make clear that we believe our decision is supported by the United States Supreme Court decision in *Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208

(2006). However, the same conclusion would have been reached based on our current state jurisprudence and absent the *Randolph* decision. We have previously explained that "[t]he provisions of the Constitution of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the Federal Constitution." Syl. pt. 2, *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979).

police.[9] The facts of the case before this Court are even more egregious than the facts in *Randolph* because the police never had consent from either co-tenant in the case *sub judice.* In fact, at the suppression hearing, the officer confirmed that the responding deputies were expressly told they were not needed, they were unwanted, and they were told to leave by Ms. Tingler. The deputies in the present case then proceeded to enter the front door to check on Mr. Bookheimer, who responded that he was in the bathroom and would be out when he finished. Neither tenant exhibited any signs that would make it reasonable for the deputies to think entry into the residence was necessary on the basis of affording protection to any resident. Further, when asked for consent to search, Mr. Bookheimer also refused consent. Indeed, one deputy testified that Mr. Bookheimer, while being detained outside the residence, attempted to educate the deputies on the constitutional implications of their entry into his place of residence.

 The State argues that the entry into the home was proper as both a protective sweep for the safety of the deputies, as well as to determine the health status of Mr. Bookheimer. However, both arguments fail. As we have previously recognized,

[a] protective search is defined as a quick and limited search of premises for weapons once an officer has individualized suspicion that a dangerous weapon is present and poses a threat to the well-being of himself and others. This cursory visual inspection is limited to the area where the suspected weapon could be contained and must end once the weapon is found and secured,

Syl. pt. 8, *Lacy,* 196 W.Va. 104, 468 S.E.2d 719. In this case, the officers had no individualized suspicion that a firearm was present, or that a firearm posed a threat to the well-being of anyone present. As previously ex-

plained, the anonymous tip mentioned that a domestic dispute was taking place, with shots fired. However, the deputies never heard shots and never saw any evidence of firearms.

 We have previously addressed the issue of information provided by an informant as a basis for probable cause to issue a warrant as follows:

A key issue in determining whether information provided by an informant is sufficient to establish probable cause is whether the information is reliable. An informant may establish the reliability of his information by establishing a track record of providing accurate information. However, where a previously unknown informant provides information, the informant's lack of a track record requires some independent verification to establish the reliability of the information. Independent verification occurs when the information (or aspects of it) is corroborated by independent observations of the police officers.

Syl. pt. 4, *Lilly,* 194 W.Va. 595, 461 S.E.2d 101. In the present case, the situation did not involve an informant whose track record could be examined. Rather, the present case involved an even more mistrustful situation: a tip by an anonymous caller. Our case law provides many caveats when relying on tips from an anonymous caller. *See, e.g.,* Syl. pt. 5, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996) ("For a police officer to make an investigatory stop of a vehicle the officer must have an articulable reasonable suspicion that a crime has been committed, is being committed, or is about to be committed. In making such an evaluation, a police officer may rely upon an anonymous call if subsequent police work or other facts support its reliability, and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-sus-

---

9. We wish to reiterate that had the facts been different, the result of this decision would have been different based on our case by case analysis. "[T]he question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes." *Randolph,* 547 U.S. at 118, 126 S.Ct. at 1525, 164 L.Ed.2d at 225 (internal cita-

tions omitted). Thus, the facts of this case turn on the reasonableness of the deputies' entry into the house based on the facts as found upon arrival at the scene. However, had facts been present to suggest a possible domestic dispute, including injury or the presence of firearms, the resulting decision by this Court may have been different.

picion standard."); Syl pt. 4, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994) ("A police officer may rely upon an anonymous call if subsequent police work or other facts support its reliability and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-suspicion standard."). Thus, it follows that an anonymous tip requires more corroboration than the tip of an informant whose identity is known and who may or may not have a track record. In the present case, there was absolutely no independent evidence at the residence to corroborate the information supplied by the anonymous tip. Indeed, all information at the scene was in direct contravention of the information supplied in the anonymous call. Moreover, the health status of Mr. Bookheimer was known as soon as officers called out to him and he replied he would be out when he finished using the bathroom. There was no need to enter the home at that time. Thus, there was no indication that a protective sweep was warranted or justified. No emergency situation or exigent circumstance existed that would have made the warrantless entry reasonable under the state and federal constitutions.

## IV.

### CONCLUSION

For the foregoing reasons, the circuit court's denial of the motion to suppress is reversed. The search and seizure was illegal, and all evidence flowing therefrom should have been suppressed. Accordingly, the subsequent trial was also in error and the resulting convictions are vacated. The cases are remanded for a new trial consistent with this Opinion.

Reversed and Remanded.

Justices MAYNARD and BENJAMIN dissent and reserve the right to file dissenting opinions.

Justices STARCHER and ALBRIGHT concur and reserve the right to file concurring opinions.

MAYNARD, Justice, dissenting.

I dissent because I believe the circuit court properly concluded that the deputies had a right to enter the appellants' residence based on exigent circumstances.

The deputies below responded to a report of a potential domestic dispute involving a gunshot and yelling. Once the deputies arrived on the scene, they were confronted by Ms. Tingler who was acting in an agitated manner. The deputies also had reason to believe that Mr. Bookheimer was in the residence either armed with a gun or wounded. Under the law as articulated by this Court and the United States Supreme Court, this emergency afforded the deputies the right to enter the residence without first obtaining a warrant.

The United States Supreme Court has indicated that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967). This Court has held that the warrantless search of a residence by police officers was proper where the police were attempting to locate an injured or deceased child whom the officers had reason to believe was in the residence. *See State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983). In the instant case, the deputies had a duty to enter the residence and speak with Mr. Bookheimer face to face to ensure that he was not injured and that he was not a threat to Ms. Tingler. Also, until the deputies determined Mr. Bookheimer's whereabouts, they had reason to fear for their own safety due to the fact that Mr. Bookheimer may have been armed. Anytime a gunshot is fired inside a home, the police have a right and a duty to enter the home to investigate without a warrant. The majority has created a dangerous precedent for domestic violence situations with this decision. To say the police cannot enter a home without a warrant where there is gunfire and loud yelling does great damage to domestic violence victims. In sum, the deputies in the instant case were compelled to act quickly to ensure their own safety as

well as the safety of Ms. Tingler and Mr. Bookheimer.

Finally, the majority opinion is based on wholly unwarranted assumptions. The majority opinion assumes that Ms. Tingler's anger and yelling were not caused by circumstances occurring prior to the officers' arrival, but rather were aimed at the fact that the officers were present on her property. The majority opinion also assumes that the deputies' entry into the residence was not motivated by a possible emergency, but rather by an intent to arrest or secure evidence. Neither of these assumptions is compelled by the evidence.

For the reasons stated above, I would affirm the judgment of the circuit court. Accordingly, I dissent.

ALBRIGHT, Justice, concurring.

I fully agree with the majority opinion and write separately only to briefly address the unfounded criticism raised in the dissenting opinion.

First of all, the majority opinion is based on the facts set forth in the record and not what the dissent characterizes as unwarranted assumptions. Secondly, the bald facts in this case simply do not support invoking any of the narrow exceptions to the constitutional right of all citizens to be protected from unreasonable searches of "their persons, houses, papers, and effects" by the police. U.S. Const. amend. IV; W. Va. Const. art. III, § 6.

Contrary to the dissent's position, the police had no "right" to enter the mobile home residence without first obtaining a warrant. They were acting on an *anonymous* phone call alleging that a domestic dispute was occurring at the mobile home and there was a gunshot. Upon arriving at the scene, the officers did not observe any physical injuries or evidence of guns or a shooting which would have corroborated the allegations of the anonymous caller. As the majority clearly relates, Ms. Tingler's agitated state was directly related to the officers' presence at her home. It is hard to believe that the officers felt the need to enter the residence in order to protect Mr. Bookheimer, Ms. Tingler or themselves. The residence was very small and the officers were able to speak with Mr. Bookheimer from the front door without entering the residence. It was also clear from the record that neither occupant consented that the officers' entering the residence. From what the officers saw and heard, no domestic dispute had occurred on the premises and no gun shots had been fired. No exigent or emergency circumstances existed to abridge the constitutional right of Ms. Tingler and Mr. Bookheimer to be secure from a search by the police absent a search warrant. Nor was there any impediment to the officers acquiring a search warrant had they ·probable cause to seek and obtain one. The fact here is that the record does not demonstrate that there was any such probable cause to obtain a warrant.

At its heart, this case has little if anything to do with domestic violence or drugs. While the fruit of the warrantless search gave rise to a drug-related prosecution, the legal issue at stake is according the proper respect to a fundamental principle guaranteed citizens through our federal and state constitutions to be free of an unreasonable search of one's home. The significance of this case is that the fundamental ideals of democracy, memorialized by our founding fathers in our constitutions, should always have real meaning and effect and not merely be words on paper without concrete significance.

By virtue of the majority opinion, this Court again gives real, concrete meaning to those words by faithfully enforcing the rights of citizens to be safe from unwarranted intrusion by the government in their homes. Accordingly, I respectfully concur.

BENJAMIN, Justice, dissenting.

I agree with the principle espoused by the majority that the protection of citizens from unwarranted search and seizure by the state is a valuable right entitled to great protection. However, I believe the majority opinion goes far beyond the protections heretofore recognized by this Court and by the United States Supreme Court in situations such as the case before us, and establishes a rigidity of unreasonableness which infringes

upon other potential rights, exigencies and obligations of the state.

Here, I fear the majority's understandable zeal for protecting the sanctity of one's home from unreasonable searches and seizures ironically may have the harmful effect of placing the safety of innocent persons, particularly those who are unable to speak for or defend themselves, in jeopardy. By ignoring any meaningful balancing as required by our search and seizure jurisprudence, I fear the majority opinion in this matter could have the unfortunate effect of placing the lives of victims of domestic violence in harm's way. Now, police responding to an emergency domestic violence call may be stopped in their duties by the unverified representation that all is well by the first person they encounter at a residence where violence has been reported and is reasonably suspected. An abuser may now stop, or effectively delay, the police from rendering assistance and aid to a victim spouse or child by precluding the law enforcement officer from entering a home to verify the well-being of all present. And while the argument can be made that all the victim would have to do is request assistance or inform the police that he or she is injured, the reality is that responding law enforcement officers have no way of knowing who may be at risk within a residence when they respond to such an emergency call. Many domestic violence victims live in fear and, so long as the abuser is present, will not contradict their abuser's representation to the police that all is well and there is no need for assistance. Moreover, responding to an

emergency domestic violence call places the responding police officers themselves at an increased risk of harm. No reading of either the United States Constitution or West Virginia Constitution supports the proposition that such valid concerns should be disregarded or even minimized. The specific exigencies of the situation must be balanced—a task best suited to trial courts—and reasonable expectations of privacy should be considered.

In the instant matter, law enforcement was alerted to a potential domestic violence incident with gunshots fired by way of an anonymous 911 telephone call.[1] Upon arriving at scene, law enforcement personnel found Appellant Jessica Marie Tingler (hereinafter "Ms. Tingler") outside the mobile home in an agitated state.[2] Upon questioning, she denied any domestic dispute and indicated to deputies that Appellant Kenneth Bookheimer (hereinafter "Mr. Bookheimer") was in the mobile home. Thereafter, the officers entered the mobile home to verify the location and condition of Mr. Bookheimer. At that time, the officers noticed evidence of a clandestine drug lab in plain view. After hearing all testimony at the suppression hearing, the trial court specifically found: 1) at the time they entered the premises, the officers did not know if Mr. Bookheimer "had been injured in the reported incident of domestic violence or if he was in the residence with a weapon"; 2) "that exigent and emergency circumstances existed in that [Mr. Bookheimer] could have presented a danger to officers or others if he had been inside the residence

---

1. The majority's perfunctory dismissal of the validity of this call is troubling to me. To justify its holding in this case, the majority likens the 911 caller to an informant without a proven track record, thereby casting doubt on the very presence of law enforcement at the Tingler residence. I believe this analogy ignores the reality of domestic violence situations where neighbors and friends seek to obtain assistance for the victim, but fear disclosure of their identity due to the likelihood of retaliation or alienation of the victim. Does the majority really intend for law enforcement to ignore anonymous calls regarding domestic violence situations because the validity of the information cannot be independently verified? I worry that such may be the unintended consequence of the majority's opinion.

2. After listening to all of the testimony at the suppression hearing, the trial court specifically

found that Ms. Tingler was "in what the officers described as an agitated state when they arrived." Ignoring this factual finding by the trial court, the majority substitutes its judgment for that of the trial court finding that Ms. Tingler's "anger and yelling were not caused by circumstances occurring prior to the arrival of the officers. Rather, [the majority now concludes,] her agitation was aimed at the fact that the officers were present on her property." Majority opinion, 221 W.Va. at 727, 656 S.E.2d at 478. I believe it to be improper for this Court to so cavalierly disregard the record and the findings of a trial court (made after seeing and comprehending all forms of evidence not readily available or apparent to an appellate court on its review of a cold record) on such factual issues.

with a weapon"; 3) "that exigent and emergency circumstances existed [because Mr. Bookheimer] could have been inside the residence injured based upon the report of domestic violence with a weapon being discharged and the agitated state in which the officers found Jessica Tingler"; and (4) the "officers had a right to enter the residence based on the said exigent and emergency circumstances to determine if [Mr. Bookheimer] was present and armed with a weapon or injured."

As the majority correctly recognizes, under our law:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996). Recently, this Court recognized the inherently factual nature of exigent circumstances, finding that whether exigent circumstances exist is generally a question which should be left to the finder of fact. *See State v. Kendall*, 219 W.Va. 686, 694, 639 S.E.2d 778, 785–6 (2006) (*per curiam*) (finding that whether exigent circumstances exist to justify a warrantless entry into a home to secure the arrest of the defendant presents question of fact for jury resolution). However, instead of affording the appropriate deference to the trial court's factual findings, the majority has substituted its judgment[3] and credibility determinations for that of the trial court and, in so doing, has failed to properly justify its findings under the applicable, established principles of law regarding exigent circumstances, protective searches and warrantless entries into homes.

The preeminent case of exigent circumstances or the emergency doctrine exception

to our constitutional warrant requirement is *State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983). Therein, this Court recognized that the warrantless entry into a mobile home to attempt to locate a missing and possibly injured child was proper under the "emergency doctrine" exception to the warrant requirement where the record did not indicate the entry was motivated by an intent to make an arrest or secure evidence. Explaining the scope of its holding in *Cecil*, this Court stated in *Wagner v. Hedrick*, 181 W.Va. 482, 489, 383 S.E.2d 286, 293 (1989), that

> [w]e adopted the emergency doctrine in *State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983), in which we held that the emergency doctrine permitted "a limited, warrantless search or entry of an area by police officers where (1) there is an immediate need for their assistance in the protection of human life, (2) the search or entry by the officers is motivated by an emergency, rather than by an intent to arrest or secure evidence, and (3) there is a reasonable connection between the emergency and the area in question." *Id.* 173 W.Va. at 32, 311 S.E.2d at 149.

The application of the emergency doctrine requires the existence of a "compelling need to render immediate assistance to the victim of a crime, or insure the safety of the occupants of a house when the police reasonably believe them to be in distress and in need of protection." *Id.* at 150 (citing *State v. Kraimer*, 99 Wis.2d 306, 315, 298 N.W.2d 568, 572 (1980)).

In the instant matter, law enforcement arrived at the Tingler residence after having been notified of a domestic dispute with gun shots having been fired. The officers found Ms. Tingler outside the mobile home in an agitated state. She denied anything was wrong, asked them to leave and refused their entry into the mobile home even though she admitted Mr. Bookheimer was inside. Having a reasonable suspicion that gunshots had been fired based upon the 911 report, the officers were confronted with a situation where they had knowledge of at least two people on the premises, only one of which was visible, and a report of gunshots. In

---

**3.** *See* footnote 2, *supra*.

such a circumstance, I do not find the trial court was clearly wrong in its factual determination that the officers were justified in entering the mobile home to determine if Mr. Bookheimer was injured based upon the report of domestic violence with a weapon fired and Ms. Tingler's demeanor. Entry into the mobile home was necessary to determine if Mr. Bookheimer was injured and in need of assistance. There was no evidence that entry into the mobile home was motivated by an attempt to secure evidence.[4] Further, there was a reasonable connection between the emergency and the area entered as Ms. Tingler had told the officers that Mr. Bookheimer was in the mobile home. Thus, the requirements of *Cecil* were met herein by the officers' entry into the mobile home.

Because the trial court was not clearly wrong in its factual determination that exigent and emergency circumstances existed to permit the officers to enter the mobile home without a warrant, the trial court did not err, in my opinion, in denying the motion to suppress to the extent the evidence of the clandestine drug laboratory was in plain view in this initial entry.[5] Contrary to the majority's finding, I believe that a simple denial of a reported domestic violence incident by one of the purported participants is insufficient to remove a reasonable suspicion that there may be an injured person nearby, particularly where gunshots fired had also been reported.

The report of gunshots being fired provides additional justification for the initial entry into the mobile home to secure Mr. Bookheimer. In syllabus points 5–8 of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), former Justice Cleckley, writing for the Court, set forth the parameters of law enforcement's ability to conduct a warrantless protective sweep for weapons in light of constitutional search and seizure concerns in this jurisdiction. Therein, this Court held:

5. Law enforcement officials may interfere with an individual's Fourth Amendment interests with less than probable cause and without a warrant if the intrusion is only minimal and is justified for law enforcement purposes. To determine whether the intrusion complained of was minimal, a circuit court must examine separately the interests implicated when the police feel a search for weapons is necessary to keep the premises safe during the search and the privacy interests of the defendant to be free of an unreasonable search and seizure of his or her residence. Only when law enforcement officers face a circumstance, such as a need to protect the safety of those on the premises, and a reasonable belief that links the sought after information with the perceived danger is it constitutional to conduct a limited search of private premises without a warrant.

6. Neither a showing of exigent circumstances nor probable cause is required to justify a protective sweep for weapons as long as a two-part test is satisfied: An officer must show there are specific articulable facts indicating danger and this suspicion of danger to the officer or others must be reasonable. If these two elements are satisfied, an officer is entitled to take protective precautions and search in a limited fashion for weapons.

7. The existence of a reasonable belief should be analyzed from the perspective of the police officers at the scene; an inquiring court should not ask what the police could have done but whether they had, at the time, a reasonable belief that there was a need to act without a warrant.

8. A protective search is defined as a quick and limited search of premises for weapons once an officer has individualized suspicion that a dangerous weapon is pres-

---

4. That the officers may have been alerted to the possibility of drugs in the home is insufficient, without more, to find that their entry into the mobile home was motivated by an attempt to secure evidence where the officers were dispatched to the scene to respond to a reported domestic violence incident with gunshots fired.

5. A suggestion was made that at least one of the officers re-entered the mobile home without a

warrant after Mr. Bookheimer had been found to be uninjured and secured. To the extent that an officer may have re-entered the mobile home after exigent or emergency circumstances had ceased due to the securing of Mr. Bookheimer, any evidence obtained during the re-entry may properly be subject to a suppression motion.

ent and poses a threat to the well-being of himself and others. This cursory visual inspection is limited to the area where the suspected weapon could be contained and must end once the weapon is found and secured.

The trial court specifically found that the officers responding to the domestic violence call herein were justified in entering the mobile home to determine if Mr. Bookheimer was inside with a weapon.

It bears repeating that the officers were responding to a call reporting gunshots fired. I find the majority's attempt to minimize this fact unpersuasive. Under the majority's reasoning, law enforcement would only be permitted to search for weapons if they actually heard the gunshots fired. That is not the law of this State as set forth in *Lacy*. Under *Lacy*, an officer is justified in conducting a protective sweep for weapons if there are "specific articulable facts indicating danger and this suspicion of danger to the officer or others must be reasonable." Syl. Pt. 6, *Lacy*. The trial court was not clearly wrong in finding that the report of gunshots coupled with Ms. Tingler's demeanor justified the officer's entry into the mobile home to determine if Mr. Bookheimer was armed. To the contrary, the majority has apparently decided this matter based upon its own view of what the officers *could* have done not "whether they had, at the time, a reasonable belief that there was a need to act without a warrant." *See*, Syl. Pt. 7, *Lacy*.[6] Because I believe the trial court did not err in denying the motion to suppress based upon its factual finding of the existence of exigent circumstances and the need for a protective sweep for weapons, I respectfully dissent.

---

6. In footnote 14 of *Lacy*, 196 W.Va. at 115, 468 S.E.2d at 730, this Court explained:
 Officers should be permitted to search for a suspected weapon and secure it if the officers have a reasonable belief that failure to secure the weapon will endanger themselves or private citizens. Although there is no ready test for determining reasonableness other than by balancing the need to search [or seize] ... [and such searches involve a] severe, though brief, intrusion upon cherished personal security, this Court finds limited searches are reasonable when weighed against the interest in crime prevention and detection, ... and the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for a search even though something has raised the officers' suspicions of danger.
 (Internal quotations and citation omitted).