# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 18-0137** (Mingo County J17-F1)

**Anthony Raheem Arriaga,**
**Defendant Below, Petitioner**

**FILED**

**January 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Anthony Raheem Arriaga, by counsel Jane Moran, appeals the order of the Circuit Court of Mingo County, entered on January 18, 2018, sentencing him to consecutive terms of imprisonment for life, with mercy, upon his conviction of first-degree felony murder, one to five years upon his conviction of conspiracy to commit first-degree murder, and one to five years upon his conviction of conspiracy to commit first-degree robbery. Respondent State of West Virginia appears by counsel Patrick Morrisey and Scott E. Johnson.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Officers from the Martin County, Kentucky, Sheriff's Department and the Mingo County, West Virginia, Sheriff's Department found the body of Bennett Hatfield in a brushy area near a creek bed at the Mountain View Cemetery in Maher, West Virginia, early one morning in May of 2016, after Mr. Hatfield had been missing for a full day. It was apparent that Mr. Hatfield had been shot, and officers collected several articles of evidence near his body, including a bloodied "hoodie" shirt and a toboggan, a cell phone, a semi-automatic handgun, and a spent bullet. While officers conducted their investigation, a nearby resident approached them and told them that a man who identified himself as Anthony Arriaga (and was clad only in underwear) arrived at his residence the day prior, offering forty dollars in exchange for transportation to Wayne County, West Virginia. The man accepted the offer, but declined Mr. Arriaga's request to take him to the cemetery before proceeding on to Wayne County.

Officers located and arrested Mr. Arriaga at his Ohio residence on the evening of May 23, 2016. Upon arrest, Mr. Arriaga provided a statement to the Mingo County Sheriff's Department deputy who transported him from Ohio to West Virginia. The statement reflects that Mr. Arriaga drove through Mingo County prior to the murder with Brandon Fitzpatrick, intent on stealing an

1

automobile. The two men arrived at Mountain View Cemetery, where they saw Mr. Hatfield placing flowers on a grave, and saw that Mr. Hatfield drove a vehicle that they believe could yield up to $15,000 through illegal means. Mr. Arriaga stated that he and Mr. Fitzpatrick exited the Chevrolet Cavalier in which they had been traveling and Mr. Fitzpatrick chided him to "do it, do it, do it. We can't have any witnesses." Mr. Arriaga explained that he then shot the small pistol he was carrying several times, hitting Mr. Hatfield in the back. Mr. Fitzpatrick then drove away in the Cavalier in which the two had arrived, leaving Mr. Arriaga to take Mr. Hatfield's Denali or find other transportation. Mr. Arriaga identified the toboggan and hoodie found at the cemetery. In a later statement, Mr. Arriaga confirmed that he used a semi-automatic pistol in the shooting.

Mr. Arriaga was indicted in the Circuit Court of Mingo County on one count of first-degree murder, one count of first-degree robbery, one count of conspiracy to commit first-degree murder, and one count of conspiracy to commit first-degree robbery. At trial, Mr. Arriaga testified on his own behalf and generally testified that he had faced many challenges in his life. His testimony concerning the criminal events was not consistent with the statements he earlier gave to police. He testified that Mr. Fitzpatrick was driving the car the day Mr. Hatfield was killed, and that he was not aware that Mr. Fitzpatrick planned to rob Mr. Hatfield when Mr. Fitzpatrick pulled the car into the cemetery. He testified that Mr. Fitzpatrick shot Mr. Hatfield and then ran to, and drove away in, the Cavalier. He also testified that Mr. Fitzpatrick was with his (Mr. Arriaga's) mother when Mr. Arriaga was arrested, and that Mr. Fitzpatrick had made threats against Mr. Arriaga's mother that induced Mr. Arriaga to take the blame for the Hatfield murder. Mr. Arriaga was convicted in a jury trial of felony murder, conspiracy to commit first-degree murder, and conspiracy to commit first-degree robbery. He was sentenced as described above.

On appeal, petitioner asserts four assignments of error: first, that the evidence was insufficient to support the jury verdict; second, that the court gave "inadequate and confusing" instructions concerning the meaning of "attempt[;]" third, that the prosecuting attorney engaged in misconduct; and, fourth, that the circuit court erred in denying Mr. Arriaga's motion to suppress the statement that he gave to police.

Mr. Arriaga's first assignment of error is premised on his assertion that there is no clear West Virginia law defining "robbery." The lack of clarity, he argues, impaired the jurors' ability to evaluate his intent in committing the crime underlying his felony-murder conviction or, absent the predicate offense, his specific intent in murdering Mr. Hatfield. Though Mr. Arriaga characterizes this assignment of error as one implicating the sufficiency of the evidence under which he was convicted, he does not discuss the evidence but instead argues that confusion in the law "fail[ed] to provide notice of the charges imposed on him which is his Constitutional right and his right to fundamental fairness of the proceedings against him. . . ." Based on the language used by petitioner, we construe the challenge as one to the indictment, and our review is de novo. *See* Syl. Pt. 2, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996). We note, however, that

> Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless

it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted.

*Miller*, 197 W. Va. 592-93, 476 S.E.2d at 539-40, syl. pt. 2. Petitioner has not directed our attention to the preservation of this issue in the appendix record on appeal. Our consideration is thus limited to the question of whether a charge of robbery yields an indictment "so defective" that it fails to charge a cognizable crime. Though petitioner argues that the elements of robbery are uncertain in our state, that is not so. West Virginia Code § 61-2-12(a) (2010) criminalizes the act of robbery, but we have recognized that this statute does not actually define the crime. *See State v. Harless*, 168 W. Va. 707, 710, 285 S.E.2d 461, 464 (1981). For that reason, we have clarified that "[t]he elements of robbery, unaffected by the statute, are derived from the common law[.]" *State v. England*, 180 W. Va. 342, 347, 376 S.E.2d 548, 553 (1988). The prohibited conducted is explained: "At common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." *Harless,* 168 W. Va. at 707, 285 S.E.2d at 462, syl. pt. 1. We find our jurisprudence sufficient to have alerted petitioner of the elements of the crime underlying his felony murder conviction, and, thus, conclude that there is no error.

In his second assignment of error, petitioner complains that the jury was inadequately instructed concerning the "attempt" to commit a crime. We agree with the State that petitioner failed to preserve this assignment of error with a timely objection to the jury charge. "The general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matters to which he objects and the grounds of his objection." Syl. Pt. 8, *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995) (citation omitted). Nevertheless, we find that "the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law." Syl. Pt. 4, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). There is no error.

We turn to petitioner's third assignment of error, wherein he argues that the prosecuting attorney engaged in misconduct by failing to produce three cell phones taken from Mr. Fitzpatrick upon his arrest.[1] The State rightly points out that the circuit court gave, at the request of Mr. Arriaga and over the objection of the State, a "missing evidence" instruction. *See* Syl. Pt. 2, *State v. Osakalumi*, 194 W. Va. 758, 461 S.E.2d 504 (1995). It explained to the jury:

If you find that the State has lost, destroyed, or failed to preserve any evidence whose contents or quality are material to the issues in this case, then you may draw

---

[1] Within this argument, petitioner briefly references his pretrial request that the State produce records made from his jail cell over an approximately ten-month period. This brief reference is unsupported by any citation to the appendix record on appeal that would allow the Court to evaluate the circumstances surrounding the request. We agree with the State that petitioner's short recital concerning his inability to secure records of his own telephone conversations sounds no alarm under the exculpatory evidence considerations of *Brady v. Maryland*, 373 U.S. 83 (1963).

an inference unfavorable to the State which may in itself create a reasonable doubt as to the Defendant's guilt.

Though petitioner asserts that this instruction was insufficient to address the prosecuting attorney's misconduct, we simply find no evidence of misconduct. Three cell phones have gone unaccounted. That fact alone does not impute bad behavior to the State. We find that the circuit court adequately instructed the jury concerning the inferences it was permitted to draw from the missing evidence.

We now turn to petitioner's final assignment of error, wherein he argues that the circuit court erred in denying his motion to suppress the statement he gave to the deputy sheriff who transported him from his home in Ohio to Mingo County when he was arrested.

> "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 1, *State v. Bookheimer*, 221 W. Va. 720, 656 S.E.2d 471 (2007). At its essence, petitioner's argument on this issue is that he was a frightened, eighteen-year-old "boy" who had not consulted with counsel or family at the time of transport, and his statement was thus not "knowing or intelligent." In support of this argument, petitioner stresses the lack of evidence of criminal activity on his part prior to Mr. Hatfield's murder, reasoning that he must have been under duress because murder is inconsistent with his past behavior.

> A statement freely and voluntarily made by an accused while in custody or deprived of his freedom by the authorities and subjected to questioning is admissible in evidence against him if it clearly appears that such statement was freely and voluntarily made after the accused had been advised of his constitutional right to remain silent and that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney and if he cannot afford an attorney one will be appointed for him, and that, after he has been so advised, he knowingly and intelligently waives such rights.

Syl. Pt. 7, *State v. Plantz*, 155 W. Va. 24, 180 S.E.2d 614 (1971), *overruled on other grounds by State ex rel. White v. Mohn*, 168 W. Va. 211, 283 S.E.2d 914 (1981). Mr. Arriaga had reached the age of majority when he found Mr. Hatfield alone in the cemetery. He was legally capable of consenting to police questioning. Petitioner has not argued that he was not adequately advised of his constitutional rights, and has not argued with specificity that he was subjected to coercion or duress that led to an involuntary utterance. We find no evidence that petitioner's statement was not freely and voluntarily made, and there was no error in the trial court's denial of the motion to suppress.

For the foregoing reasons, we affirm.

4

Affirmed.

**ISSUED:** January 13, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison